**In re LOUISIANA WORLD EXPOSITION, INC., and Contractor Creditors' Committee, Petitioners.**

**LOUISIANA WORLD EXPOSITION, INC., Plaintiff-Appellant,**

and

**Contractor Creditors' Committee, Appellant,**

v.

**FEDERAL INSURANCE CO., et al., Defendants,**

**John A. Alario, Jr., et al., Defendants-Appellees.**

Nos. 86–3839, 86–3841.

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1987.

Joseph E. Friend, Douglas S. Draper, New Orleans, La., Claude F. Reynaud, Jr., Baton Rouge, La., for petitioners.

Eugene Preas, New Orleans, La., Christopher E. Lawler, Metairie, La., Judge Peter Beer, U.S. Dist. Judge, Lawrence J. Ernst, New Orleans, La., for respondents-appellees.

F. Lee Butler, Leslie A. Lanusse, Ernest O'Bannon, John E. McAuliffe, J. Forrest Hinton, Dermot S. McGlinchey, B. Franklin Martin, III, Stephen W. Rider, Rudy J. Cerone, New Orleans, La., for National Union.

Moise S. Steeg, Jr., New Orleans, La., for Kabacoff.

John J. Weigel, New Orleans, La., for Lewis & Stapp.

Douglas Wilson, Chief Deputy City Atty., New Orleans, La., for City.

George W. Pigman, Robert S. Rooth, Patricia Krebs, New Orleans, La., for Fiddler.

Terrence C. Forstall, New Orleans, La., pro se.

John F. Whitney, New Orleans, La., for Norman Kerth.

Before GARZA, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Louisiana World Exposition, Inc. (LWE), which filed for reorganization under Chapter 11 of the Bankruptcy Code in 1984, challenges, by appeal and application for mandamus, the district court's affirmance of the bankruptcy court's dismissal of LWE's complaint seeking an injunction and to enforce the automatic stay. LWE sought to halt the payment of proceeds from certain of its directors' and officers' liability insurance policies to LWE directors and officers as legal expenses. LWE argued below, as it does here, that the liability insurance proceeds are part of the bankrupt's estate. We disagree and therefore reject the challenge to the district court's judgment.

## Facts and Proceedings Below

LWE is the corporation that organized the World's Fair hosted by New Orleans in 1984. LWE purchased several insurance policies providing liability coverage for its directors and officers for liabilities and related legal expenses they personally might incur in connection with their positions. The policies also provided indemnification coverage for LWE itself to the extent it might, pursuant to the requirement of a statute or its charter or by-laws, reimburse its directors or officers for such legal expense or liability. These policies provided a combined coverage of $20 million.

The New Orleans World Fair was beset by financial difficulties. After LWE filed for reorganization, a "Contractor Creditors' Committee" (Committee) was formed, see 11 U.S.C. § 1102(a), and in

June of 1985, the bankruptcy court granted the Committee authority to sue various of LWE's directors, officers, managers, and insurers on behalf of and in the name of LWE. A month later the Committee filed, in the United States District Court for the Eastern District of Louisiana, a complaint in the name of LWE against various LWE directors and officers, charging them with malfeasance and mismanagement (cause No. 85–2989). The insurance companies that had issued the above-referenced policies were also named defendants in that civil action pursuant to the Louisiana direct action statute (La.Rev.Stat. 22:655).[1] By May 1986, at least one of the insurance companies had paid or been billed almost $500,000 for the legal expenses of the directors and officers.

In April 1986, after that suit had been pending for some time, the Committee filed with the bankruptcy court the complaint which is the subject of the present appeal. This complaint, in which the insurance companies and the LWE directors and officers are defendants, seeks enforcement of the automatic stay and a preliminary and final injunction against any further payment by the insurance companies of the directors' and officers' legal expenses. The Committee also thereby sought an accounting and restoration of proceeds already paid. The complaint, which is in the name of LWE, was filed in the LWE bankruptcy proceeding and was docketed therein as adversary proceeding No. 86–0097. The Committee argues that the liability insurance proceeds are part of the bankrupt's estate, and thus subject to the stay. The Committee agrees that the directors and officers have a legitimate claim to the liability proceeds for their legal expenses. But the Committee

fears that if it also becomes entitled to the liability proceeds by eventually winning its above-mentioned earlier suit in district court seeking damages from the directors and officers (cause No. 85–2989), there may not be enough liability coverage for its damages *and* the directors' and officers' legal expenses. In that event, the Committee contends, the $20 million liability proceeds should be divided between the directors and officers and the bankrupt estate in shares reflecting the ratio of their respective claims to the total liability. By contrast, as events were unfolding, the defendants were receiving full coverage for their legal expenses.[2]

On June 3, 1986, the bankruptcy court dismissed in its entirety the Committee's complaint without giving written reasons. The Committee appealed to the district court, where the case was docketed as cause No. 86–2862. The district court in all things affirmed the bankruptcy court's dismissal on November 14, 1986, again without written reasons. The Committee then appealed to and sought writ of mandamus from this Court.

On the merits, we hold that it was not error to dismiss the complaint because the proceeds of the liability coverage afforded the LWE directors and officers are not property of the LWE bankruptcy estate. Before turning to this issue, we briefly address our power to grant relief and the Committee's standing to seek it.

## Discussion

### I. Jurisdiction

 When a bankruptcy dispute arises in a bankruptcy court, rather than a district court, the statute creating our appellate

---

**1.** After oral argument in this case, counsel for both sides informed us that on March 17, 1987, the district court entered final judgment for the defendants in that suit (cause No. 85–2989) on grounds that the Committee failed to state a "claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). That case is on separate appeal to this Court (our cause No. 87–3264).

The district court's dismissal of the Committee's suit does not moot the present appeal because if the district court's dismissal is reversed, the directors and officers might be found liable

in an ensuing trial. At that point, the Committee would likely become entitled to at least some of the proceeds from the liability policies. Therefore, a justiciable controversy remains before us.

**2.** This is consistent with Louisiana's "first come, first served" rule with regard to proceeds from liability insurance policies. *See, e.g., Holtzclaw v. Falco, Inc.,* 355 So.2d 1279, 1286–87 (La.1978); *Carter v. Safeco Ins. Co.,* 435 So.2d 1076, 1080 (La.Ct.App.—1st Cir.1983).

jurisdiction is 28 U.S.C. § 158.[3] This statute, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), "clearly supersedes 28 U.S.C. § 1291 ... and would inferentially appear to supersede § 1292 as well." *In re Barrier*, 776 F.2d 1298, 1299 (5th Cir.1985); *see also In re Regency Woods Apartments, Ltd.*, 686 F.2d 899, 901 (11th Cir.1982).[4] Section 158 creates jurisdiction only over "final decisions, judgments, orders, and decrees," and, at least ordinarily, our jurisdiction exists only if *both* the bankruptcy and district courts have entered final orders. *See In re Delta Service Industries*, 782 F.2d 1267, 1268 (5th Cir.1986); *In re County Management, Inc.*, 788 F.2d 311, 313–14

(5th Cir.1986).[5] In this case, the district court's order simply affirmed the bankruptcy court's disposition. Either both were final or neither was.

In the usual section 1291 case, "finality" is absent unless the district court renders a decision that " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). However, it has been acknowledged repeatedly that "[i]n many ways, bankruptcy proceedings justify a distinctive and more flexible definition of finality." 16 C. Wright, A. Miller, E. Cooper, *Federal Prac-*

---

**3.** In pertinent part, section 158 provides:

"(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgment, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

"(b)(1) The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

"(2) No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district.

"(3) A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title.

" ....

"(d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."

By contrast to this case—in which the initial proceedings were before a bankruptcy court—when the district court itself sits in bankruptcy, section 158 does not apply. Section 1291 and its companions apply in appeals from such cases. *In re Koerner*, 800 F.2d 1358, 1360 (5th Cir.1986); *In re Hawaii Corp.*, 796 F.2d 1139, 1141–42 (9th Cir.1986); *In re Amatex Corp.*, 755 F.2d 1034, 1038 (3d Cir.1985).

**4.** *In re Regency* was decided prior to the enactment of section 158. The relevant bankruptcy

appellate statute at the time was 28 U.S.C. § 1293(b). Section 158 replaced this statute, but, as has been held consistently, the two statutes are to be interpreted similarly because, except as noted below, there is no substantive difference between them. *E.g.*, *In re Delta Services Industries*, 782 F.2d 1267, 1268 n. 2 (5th Cir.1986) (citing cases); *see In re County Management, Inc.*, 788 F.2d 311, 313 n. 2 (5th Cir.1986). Section 158 differs in one substantive respect from section 1293. The latter permitted direct appeals from the bankruptcy court to a court of appeals if the parties all agreed; the former does not. *In re Exclusive Industries Corp.*, 751 F.2d 806 (5th Cir.1985).

**5.** Under section 158(a), the district courts have appellate jurisdiction over interlocutory orders. However, because courts of appeals have no such jurisdiction under section 158(d), "we must focus on the nature of the underlying bankruptcy court order.... We have jurisdiction only if the bankruptcy court order was final." *In re Delta*, 782 F.2d at 1268. Even if the bankruptcy court's disposition is final, the district court may dispense with the appeal in a nonfinal manner, for example by remanding the case to the bankruptcy court for significant further proceedings, so that we have no jurisdiction under section 158. *See In re County Management*, 788 F.2d at 313–14 (district court remanded for further factual findings necessitating determination of certain heirship issues). *See also In re Emerald Oil Co.*, 694 F.2d 88 (5th Cir.1982); *In re Riggsby*, 745 F.2d 1153, 1155 (7th Cir.1984). *But see In re Marin Motor Oil, Inc.*, 689 F.2d 445, 449 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); *In re Gardner*, 810 F.2d 87 (6th Cir.1987); *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 814 (9th Cir.1985).

*tice & Procedure* 3926, at 82 (Supp.1987); *see, e.g., In re Delta*, 782 F.2d 1267, 1269 (5th Cir.1986) (noting that "courts properly view finality more flexibly under 158(d) (and its predecessor § 1293(b)) than under § 1291"); *In re Barrier*, 776 F.2d at 1299 (same).[6]

A leading treatise states that "each adversary proceeding [and contested matter] should be considered a separate judicial unit for purposes of determining finality." 1 *Collier on Bankruptcy* 3.03, at 3–157 (L. King 15th ed. 1987). This Circuit has followed that analysis, at least as to adversary proceedings which are sufficiently discrete and separable from the rest of the bankruptcy, and in such instances appealability of an order finally disposing of the adversary proceeding is not precluded by the fact that the remainder of the bankruptcy proceeding remains pending. *In re Moody*, 817 F.2d 365, 367–68 (5th Cir.1987); *In re Lift & Equipment Service*, 816 F.2d 1013, 1016, *reh'g granted in part on other issues*, 819 F.2d 546 (5th Cir.1987); *Matter of Moody*, 825 F.2d 81, 84 (5th Cir.1987).

■ We conclude that the instant adversary proceeding forms a sufficiently discrete and separable dispute so as to come within the foregoing rule and be deemed a separate judicial unit for section 158 finality purposes. *See, e.g., In re Moody, supra* (turn over order); *In re Lift & Equipment Service, supra* (determination of validity of security interest); *Matter of Moody, supra* (turn over proceeding); *In re Regency, supra* (order granting relief from automatic stay) (cited with approval in *In re Delta*, 782 F.2d at 1270); *In re Saco Local Development Corp.*, 711 F.2d 441, 445–46 (1st

Cir.1983) (order determining priority dispute) (cited with approval in *In re Delta*, 782 F.2d at 1270). *See also, e.g., In re Minoco Group of Companies, Ltd.*, 799 F.2d 517 (9th Cir.1986) (injunction against cancellation of insurance policies issued on ground that policies were property of the estate); *Sumy v. Schlossberg*, 777 F.2d 921, 923 (4th Cir.1985) (grant or denial of exemption of certain property from the estate).

■ Of course, even though the adversary proceeding may for these purposes be considered a separate judicial unit, nevertheless for this Court to have jurisdiction under section 158 the order must finally dispose of all the issues in that separate proceeding. *Matter of Moody*, 825 F.2d at 85–86; *In re County Management*, 788 F.2d at 313. However, in this respect also "finality" may be slightly more flexible for bankruptcy purposes than in other contexts. *See, e.g., In re Lift & Equipment Services, Inc.*, 816 F.2d at 1016; *In re Saco Local Development Corp.*, 711 F.2d at 447–48. The bankruptcy court's order here, as well as its affirmance by the district court, likewise meets this aspect of the finality requirement, for the order *dismissed* the Committee's complaint *in its entirety*. This wholly terminated the entire adversary proceeding. Accordingly, the order was a final one for purposes of section 158. *See Linn v. Chivatero*, 714 F.2d 1278, 1280 (5th Cir.1983); *Koke v. Phillips Petroleum Co.*, 730 F.2d 211, 216 (5th Cir.1984).[7]

■ In any event, should we lack appellate jurisdiction, we would nevertheless have jurisdiction to grant the Committee's

---

**6.** Several cases suggest that section 1291's finality requirement should be given a similarly flexible interpretation in appeals from the district court sitting in bankruptcy. *See e.g., Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 558 (1st Cir.1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir.1985).

**7.** Because the bankruptcy court *dismissed* the complaint *in its entirety*, the fact that part of the relief sought was a preliminary injunction does not render the bankruptcy court's order interlocutory, for it also had the effect of denying all

other relief sought, including final injunction, enforcement of automatic stay, determination that the liability insurance proceeds in issue were property of the estate, and an accounting and restoration of the proceeds already paid. Likewise, it is immaterial that the district court, in its oral ruling (no written reasons were given), seemed to focus on the preliminary injunction aspects of the matter, for our jurisdiction is determined by what the district court actually did—which was to affirm the bankruptcy court's order of dismissal—not the reasons it gave for doing so.

petition for writ of mandamus. *In re Barrier, supra.* Accordingly, and since we hold against the Committee on the merits of its claim, it matters little on which basis our jurisdiction rests.

## II. Standing

■ One of the defendants-appellees, National Union Fire Insurance Company of Pittsburgh, has filed a brief arguing that the Committee lacks standing to seek relief in this case.

A number of bankruptcy courts have held that in some circumstances, a creditors' committee has standing under 11 U.S.C. § 1103(c)(5) [8] and/or § 1109(b) [9] to file suit on behalf of the debtor-in-possession (such as LWE) or the trustee. *See, e.g., In re Evergreen Valley Resort, Inc.,* 27 B.R. 75 (Bankr.D.Me.1983) (section 1103(c)(5)); *In re Toledo Equipment Co.,* 35 B.R. 315 (Bankr.N.D.Ohio 1983)` (both section 1103(c)(5) and section 1109(b)); *In re Jones,* 37 B.R. 969 (Bankr.N.D.Tex.1984) (section 1109(b)); *In re Chemical Separations Corp.,* 32 B.R. 816 (Bankr.E.D.Tenn.1983) (section 1109(b)); *In re Joyanna Holitogs, Inc.,* 21 B.R. 323 (Bankr.S.D.N.Y.1982) (section 1109(b)). Cases in the courts of appeals are scarce, but this Court has indicated approval of that view. *See Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1363 (5th Cir.1986) (suggesting that section 1109(b) provides a basis for the standing of a creditors' committee); *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1287 (5th Cir.1985) (expressing approval of bankruptcy cases such as *In re Toledo Equipment* and *In re Joyanna Holitogs* ); *see also In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985) (holding that "§§ 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court"); *see generally* Blain & Erne, *Creditors' Com-*

mittees Under Chapter 11 of the United States Bankruptcy Code: Creation, Composition, Powers and Duties, 67 Marq.L. Rev. 491, 505–09 (1984). Though conceding that a creditors' committee may sue in some circumstances, National Union Fire Insurance Company of Pittsburgh contends that the Committee has no standing here because it did not first ask the debtor-in-possession—LWE—to sue to halt the distribution of the insurance proceeds.

The circumstances in which a creditors' committee may sue on behalf of the trustee or debtor-in-possession are not spelled out in the Bankruptcy Code. However, the bankruptcy courts generally require that the claim be colorable, that the debtor-in-possession have refused unjustifiably to pursue the claim, and that the committee first receive leave to sue from the bankruptcy court. *See In re Chemical Separations,* 32 B.R. at 819 (leave of court); *In re Joyanna Holitogs,* 21 B.R. at 326 (committee's right to sue exists when trustee or debtor-in-possession will not); *In re Evergreen Valley Resort,* 27 B.R. at 76 (colorable claim; debtor refuses to sue); *In re Jones,* 37 B.R. at 973 (debtor-in-possession fails to act); *see generally In re Toledo Equipment,* 35 B.R. at 320 (discussing these criteria). We agree that these are relevant considerations, though not necessarily a formalistic checklist.

The Committee is pursuing a colorable claim that raises a serious question of bankruptcy law. As we review the record, it seems plain that LWE would not have sought the relief the Committee seeks, even if the Committee had filed a formal request. The Committee *did* ask LWE to bring an action for malfeasance against its directors and officers. LWE refused, apparently being unable to act because of the conflict of interest presented to its decision makers, and the bankruptcy court then granted the Committee's request to sue the

---

**8.** Section 1103(c) provides: "(c) A committee appointed under section 1102 of this title may— ... (5) perform such other services as are in the interest of those represented."

**9.** Section 1109(b) provides: "A party in interest, including the debtor, the trustee, a creditors'

committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

directors and officers on behalf of LWE. *See* note 1, *supra*, and accompanying text. Given LWE's refusal to file that suit, there is no reason to believe that LWE would have begun, or would begin, the present action if requested. No one contends otherwise. LWE has always been free to seek the relief that the Committee pursues here, but apparently has never done so. *See In re Chemical Separations*, 32 B.R. at 818. No acute perception is required to surmise the conflicts that might prevent LWE from suing its directors and officers or prevent it from seeking to staunch the source paying their legal fees. LWE has not ever questioned the Committee's standing. The Committee asserted in its appeal to the district court that the bankruptcy court overruled the lack of standing contention, finding in substance that it was proper for the Committee to bring the suit and that formal request and seeking of permission would have been pointless formalities, and then dismissed the complaint in the name of LWE on its merits. This has not been denied by any of the defendants and is consistent with the form of the bankruptcy court's order.[10] None of the parties listed the standing issue as an issue on appeal to the district court. *See* Rule 8006, Bankruptcy Rules. It is likewise plain that the district court did not accept the lack of standing argument. The Committee continues to urge that it has standing.

In these circumstances, and since we in any event hold adversely to the Committee on the merits, we find it inappropriate and unnecessary to now go through the empty, formalistic ritual of remanding the case so that the Committee may more punctiliously seek action from LWE and prior permission from the bankruptcy court, with obviously foreordained results, and then again present its complaint, so that we may deny it on the merits.

### III. Are the Insurance Proceeds Part of the Estate

■ Louisiana law authorizes, but does not require, a nonprofit corporation, like LWE, to indemnify its directors and officers for expenses they incur in a suit arising from their corporate duties. La.Rev. Stat. 12:227(A). If the director or officer is successful in his defense, the law states "he *shall* be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him...." Section 12:227(B) (emphasis added). That statute also empowers the corporation to purchase insurance for any director or officer for any liability "asserted against or incurred by him in any such capacity ... whether or not the corporation would have the power to indemnify him against such liability...." Section 12:227(F).

LWE purchased total indemnification and liability coverage of $20 million from three insurers: Western World Insurance Company ($5 million), National Union Fire Insurance Company of Pittsburgh ($10 million), and Federal Insurance Company ($5 million). Each of the policies provided coverage both for any indemnification of its directors or officers required of LWE by statute, corporate charter or by-law, and also separately provided liability coverage for the individual LWE directors and officers in respect to liability and related legal expenses arising out of their positions with the corporation which they personally might incur or have asserted against them. Each policy, however, provided a single total amount of coverage which was applicable to both the indemnification and the liability protections jointly, so that payment under either reduced the amount of coverage remaining available under both. The policies did not afford LWE liability coverage respecting third-party claims. LWE's purchase of the directors' and officers' liability coverage was obviously an inducement and a type of compensation for the directors and officers. *See* Note, *Liability Insurance for Corporate Executives*, 80 Harv.L.Rev. 648, 666–67 (1967). It is not unusual for indemnification and liability coverage to be provided in a single package. 13 *Fletcher Cyclopedia of the Law*

---

**10.** The record as filed with us does not include the transcript of the hearing before the bankruptcy court.

*of Private Corporations* 6045.4 (1984); Note, 80 Harv.L.Rev. at 649–691. However, as counsel for the Committee acknowledged at oral argument, this case does not involve the indemnification proceeds,[11] and, in any event, we do not believe the existence of *indemnification* coverage affects the answer to the sole and narrow question here, which is whether the *liability proceeds* are part of LWE's estate in bankruptcy.

The Committee urges that the scope of "property of the estate," 11 U.S.C. § 541, is very broad, and so it is. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Nonetheless, "the estate's legal and equitable interests in property rise no higher than those of the debtor," *In re Gagnon*, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983), and LWE, the debtor, had no ownership interest whatever in the proceeds from the liability coverage. With regard to the liability proceeds, the obligation of the insurance companies was only to the directors and officers and they are the named and the only insureds. These proceeds would be paid only if the directors and officers incurred some covered legal expense or liability. LWE's rights were limited to the indemnification proceeds. If the directors and officers had procured their own liability coverage, no one could think the proceeds from those policies belonged to LWE, as the Committee has in substance conceded. *See Holtzclaw v. Falco, Inc.*, 355 So.2d 1279, 1287 (La.1978). One having a pending, unadjudicated tort claim against another does not—whether or not the claimant is bankrupt—thereby have a property interest in liability insurance proceeds payable to the defendant; but the defendant *does* have a property interest, recognized in bankruptcy, in such proceeds. The fact that LWE purchased the policies does not change the outcome. Suppose that instead of LWE, it was the directors and officers who were bankrupt. In that case,

it would be perfectly clear under precedent to which we next turn that the liability proceeds were part of the directors' and officers' respective estates. *Cf. In re Gunder*, 8 B.R. 390 (Bankr.S.D.Ohio 1980) (car was in bankrupt's estate because he used and paid for it, even though his father, who was not bankrupt, held legal title). In such an instance, no person asserting a claim against them, as the Committee is here, would suggest that the proceeds were property of the corporation.

The parties have not cited any cases dealing directly with the precise question in this appeal, nor has our research found any. There are a great many bankruptcy cases holding that liability insurance *policies* that provide coverage for the bankrupt's liability belong to the bankrupt's estate. *E.g., In re Davis*, 730 F.2d 176, 184 (5th Cir.1984); *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Johns-Manville Corp.*, 40 B.R. 219, 230–31 (S.D.N.Y.1984); *In re Johns-Manville Corp.*, 33 B.R. 254, 263 (Bankr.S.D.N.Y.1983); *In re Mego International, Inc.*, 28 B.R. 324, 326 (Bankr.S.D.N.Y.1983); *In re Johns-Manville Corp.*, 26 B.R. 420, 436 (Bankr.S.D.N.Y.1983); *see Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 548 (5th Cir.1983); *see generally* Lam, *Cancellation of Insurance: Bankruptcy Automatic Stay Implications*, 59 Am. Bankr.L.J. 267 (1985). However, these decisions are not controlling here. The question is not who owns the policies, but who owns the liability proceeds. Although the answer to the first question quite often supplies the answer to the second, this is not always so, as we will explain. The policies in several of these cases provided coverage for judgments against or losses of the bankrupt corporation itself. *E.g., In re Davis, supra; A.H. Robins, supra; In re Johns-Manville*, 40 B.R. 219; 33 B.R.

---

11. At oral argument, the following exchange between the Court and counsel for the Committee occurred:

COURT: "Would your case be the same if these policies didn't have a company reimbursement provision?

ATTORNEY: "Yes.

COURT: "Just took that out....

ATTORNEY: "Yes."

254; 26 B.R. 420. In such cases, the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability. *See, e.g., Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986) (bankrupt's liability insurance proceeds are part of the estate); *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 996 (5th Cir.1985) (any right to proceeds from debtor's fire insurance policy belonged initially to debtor); *In re Crownover,* 43 B.R. 22, 24 (Bankr.E.D.Mo.1984) (proceeds of fire insurance policy payable to debtor was property of the estate). That is different from the liability coverage here, which does not cover the liability exposure of the corporation at all, but only of its directors and officers and is payable only to them. Actually, what these cases suggest is that it is the directors and officers to whom the liability proceeds are payable, and not LWE, who have the property interest in such proceeds for bankruptcy purposes.

It is true that policies in some of the above-cited cases provided directors' and officers' liability coverage, and indemnification coverage for the corporation, just like the policies in this case, and still the cases held that the *policies* were property of the bankrupt corporation's estate. Again, we emphasize the distinction between owning a policy and owning the proceeds. There is also another key factual and procedural distinction between the latter cases and this one. Here, the suit calling the liability coverage into play is one brought by the Committee on behalf of the debtor, LWE. The object of that action is to enlarge the debtor's estate. In the cited cases where the directors' and officers' liability coverage was at issue, the situation was just the opposite. For example, the plaintiffs in the Johns-Manville and A.H. Robins litigations were injured persons seeking recovery for themselves. The plaintiffs were not suing for the debtor's benefit. The courts *stayed* the third-party actions against the directors and officers in part because of the likelihood that their liability coverage would be exhausted. They would then turn to the bankrupt corporation for their statutory right to indemnification, and at that point an asset of the estate—the indemnification

proceeds—would be threatened. As one case put it, "to the extent expenditures … exhaust those [liability] limits, an asset of the estate is diminished." *In re Johns-Manville,* 26 B.R. at 429. The question before those courts was, should the third-party suits *against* the debtor and its directors and officers be stayed. The courts answered yes, partly because they considered the indemnification proceeds threatened.

Here, any payment under the liability coverage reduces the amount of the potential indemnification claim to the same extent that policy amounts available for indemnification are thus reduced. There is not the potential for increasing the estate's exposure by payment of liability proceeds due. The bankruptcy court overseeing LWE's reorganization has not stayed the Committee's action (cause No. 85–2989) against the LWE officers and directors. Perhaps it has not been asked to do so. A stay of related suits by third parties presents other considerations. Whether third-party suits against the directors and officers should be stayed is also an issue that is not before us. The stay cases stayed third-party *suits against* either the debtor and/or its directors and officers or their liability insurers, they did *not* stay payment of liability proceeds to directors and officers who were so insured under policies carried for that purpose by the bankrupt corporation. All we decide is that the liability proceeds payable to the directors and officers are not part of the bankrupt's estate. The cited cases do not hold to the contrary. Here, as noted, the claim of the Committee (for LWE) is not related to the indemnification coverage, but rather asserts that the liability coverage afforded the directors and officers, which LWE could reach if successful in its suit (cause No. 85–2989) against them, will be diminished by the payment of their legal fees and hence there will be less of such liability coverage *against* which LWE, as plaintiff in that suit, might effect any recovery it may ultimately be awarded therein.

The Committee also reasons that if the policies are part of the estate, then *any* proceeds from them are part of the estate

under section 541(a)(6), which literally does read this way.[12] However, the Code's "proceeds" concept does not apply here. Section 541(a)(6) provides that if property of the estate is converted, the estate owns that into which it is converted. *E.g., Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515 (2d Cir.1985) (conversion in form of property does not affect its status as property of the estate; insurance payments for repair to automobile that was property of the estate were also property of the estate). Similarly, income produced from property of the estate belongs to the estate. *In re Dias*, 24 B.R. 542, 545 (Bankr.D.Id.1982) (milk from a cow is proceeds under section 541(a)(6)). But this "proceeds concept" does not give the bankrupt's estate property the debtor would not own if it were solvent, and as we have explained, a solvent LWE would never have owned the only proceeds at issue here.

More on point are cases holding that when a purchaser of an insurance policy assigns its proceeds elsewhere, the assignee or beneficiary owns the proceeds, and the bankrupt's estate does not. *In re Moskowitz*, 14 B.R. 677, 680–81 (Bankr.S.D.N.Y.1981) (insurance proceeds that had been assigned to the hospital that treated the debtor were not property of the estate); *In re Ivory*, 32 B.R. 788, 793–94 (Bankr.D.Or. 1983) (fire insurance policy proceeds made payable "to the mortgagees ... to the extent of their interest" were not property of debtor/mortgagors, who had purchased the policy); *In re Family & Industrial Medical Facilities, Inc.*, 25 B.R. 443, 450–51 (Bankr.E.D.Pa.1983) (debtor's assignment of fire insurance proceeds excluded those proceeds from bankrupt's estate). These cases state a sound rule in holding that ownership of a policy does not inexorably lead to ownership of the proceeds. *See also In re Dias*, 24 B.R. at 545 (assignment of income from milk sales removes this income as property of the estate under section 541(a)(1)).

We agree that the policies in this case belong to the bankrupt LWE's estate; this empowers the bankruptcy court to prevent their cancellation, for example. *See, e.g., In re Minoco Group of Companies*, 799 F.2d at 519–20.[13] But we determine that the *liability proceeds*, which belong only to the directors and officers, are not part of the estate, and on that basis we hold that the Committee's complaint was correctly dismissed. Accordingly, we decline to set aside the district court's affirmance of the bankruptcy court's dismissal of the complaint.

Judgment AFFIRMED; Petition for Writ of Mandamus DENIED.

---

**12.** Section 541(a)(6) states that property of the estate includes "[p]roceeds ... from property of the estate."

**13.** In *In re Minoco Group of Companies*, the issue was whether policy cancellation could be stayed. Answering in the affirmative, the Ninth Circuit noted the bankruptcy court's unchallenged findings that if the policy were canceled, the debtor would suffer from both the difficulty of attracting and retaining competent personnel and from the fact that it (and not the insurance company) "would be" required to reimburse former and present directors and officers for legal expenses in suits arising from their corporate activities. 799 F.2d at 518. *In re Minoco Group of Companies* focuses on ownership of the policy—which is related to cancellation (the issue there)—not on ownership of *liability proceeds* as to which the debtor was not the insured. It also notes that *indemnification* payments by the debtor will be required, a finding not made here.