REAVLEY, Circuit Judge:
This is a direct appeal from the bankruptcy court. The primary issue is whether proceeds of the debtor's liability policy are property of the bankruptcy estate. The bankruptcy court found the proceeds were property of the estate. We AFFIRM.
I.
The facts of this case are tragic yet uncomplicated. In May 2016, a bus owned by OGA Charters, LLC rolled over while on its way to the Kickapoo Lucky Eagle Casino in Eagle Pass, Texas. The single-vehicle crash killed nine passengers and injured more than 40 others. The accident gave rise to personal-injury, wrongful-death, and survival claims against OGA. However, OGA owned only two busses and had limited resources. As is often the case, the search for assets began.
Through New York Marine & General Insurance Company ("NYM"), OGA owned an insurance policy that provided $5 million in liability coverage for "covered autos." The policy also provided collision and comprehensive coverage. A small group of victims and their representatives (the "Settled Claimants") quickly entered into settlements with NYM that-if valid and enforceable-would exhaust the $5 million in liability coverage.[1] Less than two months after the accident, the victims without settlements (the "Unsettled Claimants") filed an involuntary bankruptcy petition against OGA. The Unsettled Claimants also initiated an adversary proceeding against OGA and NYM. The Settled Claimants intervened in the adversary proceeding, and the bankruptcy court preliminarily enjoined NYM from paying out any policy proceeds.
Following the appointment of a Chapter 7 trustee, the parties filed cross-motions for summary judgment, disagreeing over *602 whether the proceeds of the insurance policy were property of the bankruptcy estate under 11 U.S.C. § 541(a). The bankruptcy court granted summary judgment in favor of the Trustee and Unsettled Claimants, ruling that the proceeds were property of the estate. The Settled Claimants sought a direct appeal to this court, and the bankruptcy court certified the following question under 28 U.S.C. § 158(d)(2) :
Are proceeds of a debtor-owned liability insurance policy property of the debtor's bankruptcy estate when: (1) the policy covers the debtor's liability to third parties; (2) the debtor cannot make a legally cognizable claim against the policy; and (3) the claims by third parties exceed the coverage limits of the policy[?]
The Settled Claimants argue that the policy proceeds are not property of the estate, meaning they should be allowed to recover the full $5 million despite OGA's pending bankruptcy proceedings. Conversely, the Unsettled Claimants argue that the proceeds should be subjected to the bankruptcy court's process of equitable distribution amongst creditors.[2] The claims against OGA's estate exceed $400,000,000. Other than the accident victims and their representatives, OGA has one other creditor, with a claim for less than $9,000.
II.
When directly reviewing an order of the bankruptcy court on appeal, we apply the same standard of review that would have been used by the district court. SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest Diving, LP ), 579 F.3d 411, 417 (5th Cir.2009). Thus, we review the bankruptcy court's grant of summary judgment de novo . Williams v. Placid Oil Co. (In re Placid Oil Co. ), 753 F.3d 151, 154 (5th Cir.2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Kinkade v. Kinkade (In re Kinkade ), 707 F.3d 546, 548 (5th Cir.2013) (quoting FED. R. CIV. P. 56(a) ); FED. R. BANKR. P. 7056 (applying FED. R. CIV. P. 56(a) to adversary proceedings).
III.
The commencement of a bankruptcy case creates an estate under 11 U.S.C. § 541. Section 541 provides that the "estate is comprised of all the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) - (a)(1). The definition is intended to be broadly construed. E.g. , United States v. Whiting Pools, Inc. , 462 U.S. 198, 204-05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). While a debtor's liability insurance policies are generally property of the estate, our treatment of insurance proceeds has a complicated history. See, e.g. , Sosebee v. Steadfast Ins. Co. , 701 F.3d 1012, 1023 (5th Cir.2012).
In Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition, Inc. ), 832 F.2d 1391 (5th Cir.1987), a corporate debtor purchased liability insurance for its individual directors and officers. Id. at 1398. The policies at issue covered the directors' personal liability and legal expenses incurred by reason of their positions with the corporation. Id. Importantly, the directors and officers were the "named [ ] and only insureds," and the policy did "not cover the liability exposure of the corporation at all." Id. at 1399-1400. We held that the liability proceeds were not property of the estate *603 and, in doing so, distinguished between ownership of insurance policies and insurance proceeds . Id. at 1399-1401 ("The question is not who owns the policies, but who owns the proceeds.").
We next faced the policy/proceeds distinction in Houston v. Edgeworth (In re Edgeworth ), 993 F.2d 51 (5th Cir.1993). In that case, Dr. Edgeworth filed for Chapter 7 protection shortly after a woman died under his care. Id. at 53. After Edgeworth received a discharge, the woman's daughter sought bankruptcy court approval to file a claim against Edgeworth's malpractice policy. Id. We held the daughter could pursue her claim because the malpractice carrier was not protected by Edgeworth's discharge and the proceeds of the policy were not property of his estate. Id. We explained:
The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.
Id. at 55-56 (footnotes omitted). Under this framework, the policy itself was property of the Chapter 7 estate but the proceeds of the policy were not. Id. at 56. However, the panel added an important caveat:
Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives. Moreover, no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds. Consequently , in this case the insurance proceeds were not part of the estate.
Id. at 56 (emphasis added).
The framework laid out in Edgeworth remains applicable in this circuit. See Sosebee , 701 F.3d at 1023-24 (applying Edgeworth to determine whether proceeds of a liability insurance policy were property of the estate); see also Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co. , 852 F.3d 405, 413 n.11 (5th Cir.2017).[3] However, the inquiry remains, as it has always been, a fact-specific one. See Edgeworth , 993 F.2d at 56 ; In re Sfuzzi, Inc. , 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996) ("[T]he question of whether the proceeds are property of the estate must be analyzed in light of the facts of each case.").
Thus, the issue in this case is whether, under the Edgeworth framework, liability policy proceeds are property of the estate when the policy limit is insufficient to cover a multitude of tort claims. The Settled *604 Claimants argue that no such fact-specific exception exists and (if it did) it would contravene both the bankruptcy code and state law. We disagree.
In our previous decisions, we have been careful to leave open the possibility that liability proceeds are property of the estate in cases like this one. Edgeworth , 993 F.2d at 56 (pointing out "no secondary impact has been alleged upon [the] estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds ") (emphasis added); Vitek , 51 F.3d at 535 (explaining that we had not yet "grappled" with all of the issues on the proceeds "continuum"); see Sosebee , 701 F.3d at 1023 (acknowledging that "in the limited instance of a mass tort action where hundreds or thousands of claims against the debtor's insurer might exhaust insurance proceeds and thus threaten the debtor's estate over and above limits of liability insurance policies[,] [courts have] held the proceeds of liability insurance policies are property of the bankruptcy estate") (emphasis in original) (citing MacArthur Co. v. Johns-Manville Corp. , 837 F.2d 89, 92 (2d Cir.1988) ; Edgeworth , 993 F.2d at 56 n.21 ).
We now make official what our cases have long contemplated: In the "limited circumstances," as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate. Here, over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible.[4] Sosebee , 701 F.3d at 1023 ; see, e.g. , Johns-Manville Corp. , 837 F.2d at 92-93 ; In re Taylor Agency, Inc., 281 B.R. 354, 362-63 (Bankr. S.D. Ala. 2001) (holding proceeds were property of the estate when unlikely to satisfy all claims). To be sure, this interest does not bestow upon the debtor a right to pocket the proceeds. Instead, as the Eighth Circuit has explained:
[I]f the policies are held to cover [ ] damage claims, that holding will reduce the total amount of damage claims lodged against the estate ... [and] [t]hough the policy proceeds do not flow directly into the coffers of the estate, they do serve to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate.
Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc. ), 837 F.2d 325, 329 (8th Cir.1988). We find further support for this conclusion in one of the leading bankruptcy treatises:
When there are multiple claimants to the policy proceeds, the court should be able to oversee the allocation of the proceeds among claimants. Although policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to satisfy that class fully. In such a case, oversight by the court is necessary to assure an equitable distribution of the available assets.
3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed.). A holding to the contrary would "prevent [the] bankruptcy court from marshalling the insurance proceeds, and, along with the other assets, arranging for their distribution *605 so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate." Tringali v. Hathaway Mach. Co. , 796 F.2d 553, 560 (1st Cir.1986) (Breyer, J.).
The Settled Claimants argue that treating the proceeds as property of the estate runs afoul of the bankruptcy code. We disagree, for "[t]he language of § 541(a)(1) is broad enough to cover an interest in liability insurance, namely, the debtor's right to have the insurance company pay money to satisfy ... debts accrued through ... the insured's negligent behavior." Tringali , 796 F.2d at 560 ; see Burgess v. Sikes (In re Burgess ), 438 F.3d 493, 509 (5th Cir.2006) (en banc) (Jones, J., dissenting) ("Sweeping all of the debtor's property into the bankruptcy estate created at filing is the means by which the Code achieves effective and equitable bankruptcy administration.").[5]
Nor does our holding, as the Settled Claimants suggest, constitute a "collateral attack" on state law. Under Texas law, insurers do not incur independent liability solely by reason of entering into reasonable settlements that exhaust or diminish the proceeds available to satisfy other claims. See Tex. Farmers Ins. Co. v. Soriano , 881 S.W.2d 312, 315 (Tex. 1994). However, categorizing the proceeds as property of the estate does not involve any sort of determination regarding the negligent-settlement liability of an insurer or the lack thereof. Further, we make no determination as to the validity, enforceability, or propriety of the purported settlements. In fact, the bankruptcy court explicitly left "a determination ... on potential encumbrances of Policy Proceeds ... for another day."
In sum, we hold this case presents the limited circumstances in which the proceeds of a debtor's liability policy are property of the estate.[6]
The judgment of the bankruptcy court is AFFIRMED.

The parties disagree on whether the settlements are valid and enforceable under Texas law. See Tex. R. Civ. P. 11. Although we refer to the parties as "Settled Claimants" and "Unsettled Claimants" for simplicity, we make no determination as to the validity or enforceability of the settlements.

The bankruptcy court has not yet decided whether the proceeds of the policy, if property of the estate, are encumbered by the purported settlements.

We note one other case, Homsy v. Floyd (In re Vitek, Inc. ), 51 F.3d 530 (5th Cir.1995), decided two years after Edgeworth . Though Vitek ultimately turned on the scope of an injunction and misstatements of state insurance law, the panel questioned Edgeworth 's policy/proceeds distinction. Id. at 537-39 ; see ids="6114841,11350246" index="41" url="https://cite.case.law/f3d/51/530/">id. at 534 n.17. The Vitek panel stated, "when a debtor corporation owns an insurance policy that covers its own liability vis-a-vis third parties, we-like almost all other courts that have considered the issue-declare or at least imply that both the policy and the proceeds of that policy are property of the debtor's bankruptcy estate." Id. at 535. We note that "under the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect." Arnold v. U.S. Dep't of Interior , 213 F.3d 193, 196 n.4 (5th Cir.2000).

In addition to this interest, OGA has a legally cognizable claim to the proceeds of the property damage coverage provided by the policy. In fact, according to the representations of OGA's counsel to the bankruptcy court, OGA has already made a claim and received $20,000 under that portion of the policy.

The Settled Claimants argue that the bankruptcy court impermissibly used its powers under 11 U.S.C. § 105(a) to contravene other sections of the Bankruptcy Code, namely 11 U.S.C. § 541(d). However, our conclusion rests on a permissibly broad construction of § 541(a) and does not invoke § 105(a) or offend § 541(d). See Law v. Siegel , 571 U.S. 415, 421, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) ; 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); 11 U.S.C. § 541(d) ("Property in which the debtor holds ... only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.").

The Unsettled Claimants assert two issues on cross-appeal. However, the Unsettled Claimants did not seek permission from this court to cross-appeal. See 28 U.S.C. § 158(d) ; Fed. R. App. P. 6(c) ; Fed. R. Bankr. P. 8006(g). We do not consider the cross-appeals.