# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2023

Lyle W. Cayce
Clerk

No. 23-40125

———————

Law Office of Rogelio Solis PLLC; Ana Gomez,

*Appellants,*

*versus*

Catherine Stone Curtis,

*Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 7:21-AP-7002, 7:22-CV-418

———————

Before Graves, Higginson, and Ho, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

In this direct appeal from the bankruptcy court, we are tasked with answering whether the pre-petition payment of insurance proceeds to a tort claimant creditor of a debtor, made in accordance with state insurance law, constitutes a "transfer of an interest of the debtor in property" under 11 U.S.C. § 547. The bankruptcy court found that, in the circumstances present here, such payment could be a transfer of the debtor's property. We AFFIRM.

No. 23-40125

## I.

This bankruptcy case arises out of a terrible tragedy. As alleged in the complaint in the underlying adversary proceeding, on December 19, 2020, a tractor-trailer owned by Josiah's Trucking LLC (the "Debtor") crashed into a vehicle (the "Accident") in which Carlos Tellez, Jr. and Anna Isabel Ortiz were riding, ultimately resulting in their deaths. Ortiz was survived by her mother, Ana Gomez, and father, Reyes Adrian Ortiz (collectively, the "Ortiz Family"). Tellez was survived by Sonia Tellez, Carlos Tellez, Rose Mary Rodriquez, and I. Tellez (collectively, the "Tellez Family").

At the time of the Accident, the Debtor was insured by Brooklyn Specialty Insurance Company RRG, Inc. ("Brooklyn Specialty") for a policy limit of $1,000,000. Soon after the Accident, both families engaged counsel and began the insurance claims process. Gomez employed the Law Firm of Rogelio Solis, PLLC (the "Solis Law Firm"), and the Tellez family engaged Escobar & Cardenas, L.L.P. In the weeks following the Accident, the Tellez Family engaged in discussions with Brooklyn Specialty and ultimately filed suit against the Debtor, the Debtor's owner, and the driver. In contrast, Gomez, through the Solis Law Firm, made a *Stowers* demand on Brooklyn Specialty for the limits of the policy.[1]

On January 12, 2021, Brooklyn Specialty transferred $1,000,000 (the "Policy Proceeds") to the Solis Law Firm's Interest on Lawyers' Trust Account ("IOLTA") in settlement of Gomez's claims. That same day,

---

[1] Under *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n. App. 1929, holding approved), Texas law imposes a "basic tort duty," known as the *Stowers* doctrine, under which insurers, "when faced with a settlement offer within policy limits, must accept the offer . . . when an ordinarily prudent insurer would do so in light of the reasonably apparent likelihood and degree of that insured's potential exposure to a valid judgment in the suit in excess of policy limits." *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999) (citation omitted).

No. 23-40125

Brooklyn Specialty informed the Tellez Family that the policy limit had been exhausted. Then, on January 18, 2021, two checks were issued: one for $680,000 to Gomez for settlement of her claims, and the other for $320,000 to the Solis Law Firm for attorneys' fees.

On January 24, the Tellez Family, who received nothing from the Policy Proceeds, commenced an involuntary bankruptcy proceeding against the Debtor. On February 9, Appellee Catherine S. Curtis, then the Interim Trustee (now, the "Trustee"), brought an adversary proceeding against Appellants Gomez and the Solis Law Firm seeking to avoid and recover the transfer of the Policy Proceeds pursuant to 11 U.S.C. §§ 547 and 550 of the Bankruptcy Code (the "Complaint").[2] Appellants moved to dismiss on the ground that the Trustee failed to allege a transfer of the Debtor's property because the Debtor had neither legal title in nor a contractual right to receive the Policy Proceeds, and otherwise lacked control over their disbursement.[3]

The bankruptcy court denied the motion. The bankruptcy court first found that the Complaint, which alleged over $8,000,000 in claims related to the Accident against the $1,000,000 policy limit, satisfied the "limited circumstances" set forth in *Martinez v. OGA Charters, L.L.C.* (*In re OGA Charters*), 901 F.3d 599 (5th Cir. 2018), in which a Debtor may have an equitable interest in the insurance proceeds such that they can be classified as property of the estate. Then, the bankruptcy court considered whether the pre-petition payment of the Policy Proceeds affected this equitable interest. Relying on *Begier v. IRS*, 496 U.S. 53 (1990), the bankruptcy court found that it did not.

---

[2] The Trustee filed the operative amended complaint on March 26, 2021.

[3] Although Appellants raised three main arguments for dismissal, only one is relevant as to this appeal.

No. 23-40125

The district court subsequently certified the following question for direct appeal to this court pursuant to 28 U.S.C. § 158(d)(2):

> Whether the pre-petition payment of insurance proceeds to a tort claimant creditor of a debtor constitutes a "transfer of an interest of the debtor in property" under 11 U.S.C. § 547 when such payment is made by an insurer of the debtor pursuant to a valid *Stowers* settlement demand under Texas law.

## II.

"When directly reviewing an order of the bankruptcy court, we apply the same standard of review that would have been used by the district court." *SeaQuest Diving, LP v. S&J Diving, Inc. (In re SeaQuest Diving, LP)*, 579 F.3d 411, 417 (5th Cir. 2009). Thus, "[w]e review conclusions of law and mixed questions of law and fact *de novo* and review findings of fact for clear error." *Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021) (citation omitted).

On appeal, Appellants contend that the district court erred in determining that the Debtor held an equitable property interest in the Policy Proceeds. This is because, Appellants argue, the Debtor has neither a legal nor equitable right to the proceeds under Texas law. But, critically, Appellants fail to contend with *In re OGA Charters*, in which we held that "[i]n the 'limited circumstances,' as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." 901 F.3d at 604. As we explained, "this interest does not bestow upon the debtor a right to pocket the proceeds," but "[i]nstead . . . 'serve[s] to reduce some claims and permit more extensive distribution of available assets in the liquidation of the estate.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 329 (8th Cir. 1988)).

No. 23-40125

Appellants do not dispute the bankruptcy court's finding that the factual allegations here fall under the "limited circumstances" addressed in *In re OGA Charters*. As the bankruptcy court noted, the Complaint alleges over $8,000,000 in claims against the Debtor's estate arising from the Accident, far beyond the $1,000,000 policy limit. Although the facts in *In re OGA Charters* were more extreme, involving $400,000,000 in claims against a $5,000,000 policy and more claimants overall, *id.* at 602, the present case is still clearly one in which "the policy limit is insufficient to cover [the] multitude of tort claims" faced by the estate. *Id.* at 603-04. Thus, the bankruptcy court correctly concluded that, under binding precedent in *In re OGA Charters*, the Policy Proceeds would be considered property of the estate.

Appellants do not distinguish *In re OGA Charters* or otherwise explain why it does not control this case. Instead, Appellants suggest that *In re OGA Charters* must have been incorrectly decided because insureds have "no right" to insurance proceeds under Texas law. "Under our well-recognized rule of orderliness, however, a panel of this court is bound by circuit precedent," which clearly holds that insurance proceeds can, in the circumstances alleged here, be considered property of the estate.[4] *Hidalgo Cnty Emergency Serv. Found. v. Carranza (In re Hidalgo Cnty. Emergency Serv. Found.)*, 962 F.3d 838, 841 (5th Cir. 2020).

---

[4] To this end, Appellants' arguments that Texas law, not federal bankruptcy law, controls are incorrect. *In re OGA Charters* similarly dealt with insurance proceeds governed by Texas law and explicitly rejected Appellants' argument that the Texas Supreme Court's decision in *Texas Farmers Insurance Co. v. Soriano*, 881 S.W.2d 312 (Tex. 1994) dictates the outcome of the case. *See In re OGA Charters*, 901 F.3d at 605 (explaining that, because "categorizing the [insurance] proceeds as property of the estate does not involve any sort of determination regarding the negligent-settlement liability of an insurer or the lack thereof," its holding was not "a 'collateral attack' on state law," including *Soriano*).

5

Granted, as the bankruptcy court recognized, *In re OGA Charters* addressed the question of whether insurance proceeds were property of the estate pursuant to § 541 of the Bankruptcy Code, not whether a transfer of those proceeds could be avoided pursuant to § 547. That is because, in *In re OGA Charters*, although the insurer had entered into settlements with some of the claimants, the insurance proceeds had yet to be disbursed. 901 F.3d at 601. In contrast, here Brooklyn Specialty transferred the Policy Proceeds fourteen days before the involuntary bankruptcy petition was filed, and two checks totaling the Policy Proceeds were made out to Appellants eight days before the involuntary petition was filed.

We find that this pre-petition payment of the Policy Proceeds does not affect the Debtor's equitable interest in them at the time the petition was filed. Section 541 of the Bankruptcy code, which governs the creation of an estate in bankruptcy and is at issue in *In re OGA Charters*, states that "such estate is comprised of all . . . *legal or equitable interests of the debtor in property* as of the commencement of the case." § 541(a)(1) (emphasis added). Relatedly, § 547 provides the means by which a trustee "may . . . avoid any transfer of *an interest of the debtor in property*," including those "made on or within 90 days before the date of the filing of the petition," if this transfer meets certain statutory conditions.[5] § 547(b) (emphasis added). Relevant here, courts understand "an interest of the debtor in property" as used in § 547(b) to be coextensive with "interests of the debtor in property" as used in § 541(a)(1). *Begier*, 496 U.S. at 59 n.3; *see also Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1416 (5th Cir. 1997).

As the Supreme Court explained in *Begier*, "[b]ecause the purpose of the avoidance provision is to the preserve the property includable within the

---

[5] Appellants do not argue that these statutory conditions are not satisfactorily pled.

bankruptcy estate . . . 'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." 496 U.S. at 58. The Policy Proceeds would have been property of the estate at the time the petition was filed if they had not been transferred. Thus, for the purposes of the avoidance provision as stated in *Begier*, the Policy Proceeds are the property of the estate. For the reasons discussed above, the Complaint alleges facts falling under the "limited circumstances" in which *In re Charters, L.L.C* states that insurance proceeds are considered property of the estate.

Thus, we find that the bankruptcy court correctly found that the trustee had properly alleged a transfer of the Debtor's property as required by § 547. We therefore AFFIRM.