49 So.3d 17 (2010)
Vanessa EMERY and Nedra Wrights
v.
PROGRESSIVE CASUALTY INSURANCE COMPANY, T & T Seafood, Inc., Joshua Tourere, Allstate Property & Casualty Insurance Company, and Liberty Mutual Fire Insurance Company.
No. 2010 CA 0327.
Court of Appeal of Louisiana, First Circuit.
September 10, 2010.
*18 David J. Schexnaydre, Mary B. Lord, Pajares & Schexnaydre, L.L.C., Mandeville, LA, for Defendant-Appellant Progressive Security Insurance Company.
Keith L. Richardson, Brad M. Boudreaux, Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, LA, for Defendant-Appellee T & T Seafood, Inc.
Before PARRO, GUIDRY, and HUGHES, JJ.
PARRO, J.
Defendant, Progressive Security Insurance Company (Progressive),[1] appeals the judgment of the trial court granting a partial motion for summary judgment in favor of another defendant, T & T Seafood, Inc. (T & T), finding that Progressive had waived its coverage defenses in this matter. For the reasons that follow, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiffs, Vanessa Emery and Nedra Wrights, were involved in an automobile accident in which the vehicle they were occupying was rear-ended by a vehicle driven by Joshua Tourere (Joshua) on April 25, 2006. According to the plaintiffs' petition, the impact from the collision forced the plaintiffs' vehicle off the road, where the vehicle then struck a sign and two parked cars.
When the accident occurred, Joshua was allegedly in the course and scope of his employment with T & T, thus making T & T allegedly vicariously liable for the accident and the resulting damages. At the time of the accident, Progressive provided automobile liability coverage to T & T for various vehicles listed on the declarations page of the policy; however, Joshua was not driving any of these listed vehicles when the accident occurred. Instead, Joshua was driving his personal vehicle, which Progressive alleges was not covered by the policy it issued to T & T, as it was not one of the listed vehicles covered by the policy, nor was it a replacement or substitute vehicle.
Progressive contends that it was notified of the accident on November 13, 2006, and that eleven days later, on November 24, 2006, it sent T & T a reservation of rights letter, citing the parts of the policy defining what was considered an insured auto and advising T & T that it was conducting an investigation into the issue of coverage. In the letter, Progressive advised T & T that no action it might take to investigate, explore settlement, or defend a lawsuit arising out of the accident should be deemed to be an admission of coverage under the policy. The letter further stated that it would notify T & T when its coverage investigation was complete. However, on the same date, Progressive sent another letter to T & T advising T & T that it had completed its investigation *19 into the accident and that it had concluded that there was "no coverage available for this loss." At no point in this letter did Progressive advise T & T that there was a conflict of interest or that T & T should consult a separate attorney with regard to the issue of coverage.
Despite having sent these letters to T & T, Progressive subsequently appointed a single attorney to defend both Progressive and T & T when the plaintiffs filed their lawsuit against them on February 21, 2007.[2] One month later, this attorney filed an answer on behalf of both T & T and Progressive that contained various defenses, including an affirmative defense asserting that there was no coverage under the policy.[3] Although Progressive had now denied coverage to T & T by letter and in an official pleading, Progressive continued to use a single attorney to represent both itself and its insured in this matter. On August 12, 2008, while still representing both Progressive and T & T, this attorney deposed Joshua and specifically inquired about facts concerning coverage.[4] Only after taking this deposition did Progressive appoint separate counsel for T & T. Therefore, on August 22, 2008, almost twenty-one months after Progressive had first denied coverage by letter to T & T, and more than seventeen months after the original attorney had filed an answer asserting the affirmative defense that there was no coverage, Progressive provided a separate attorney solely to represent the interests of T & T. It was that attorney who then advised T & T in a letter of the conflict of interest. The new attorney further advised T & T that he would not be representing T & T on the coverage issue and that T & T might wish to retain another attorney on that issue.[5]
In January 2009, after this separate attorney had been appointed, the attorney representing only Progressive went to the home of John Tourere (Mr. Tourere), the owner and president of T & T, to get him to sign an affidavit concerning the ownership of various motor vehicles, which was a key fact in the coverage dispute. It is undisputed that T & T's attorney was not there with him when he signed the affidavit, and according to T & T's briefs and argument both at the trial court level and the appellate level, T & T's attorney was not notified that Progressive's attorney intended to obtain this affidavit from Mr. Tourere. Indeed, T & T's attorney contends *20 that both attorneys for T & T only found out about the affidavit when it was attached to Progressive's motion for summary judgment. Moreover, Mr. Tourere stated in a later affidavit that he was not aware that the attorney who came to get his signature on the affidavit concerning vehicle ownership was representing only Progressive in this matter.
After obtaining this affidavit, Progressive filed a motion for summary judgment contending that there was no coverage under the policy. T & T responded by filing a motion for partial summary judgment arguing that Progressive had waived its coverage defenses. After a hearing, the trial court granted T & T's motion for partial summary judgment and denied Progressive's motion for summary judgment. The trial court further designated the judgment as final and appealable after finding no just reason for delay.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Duncan v. U.S.A.A. Insurance Co., 06-363 (La. 11/29/06), 950 So.2d 544, 546; see LSA-C.C.P. art. 966. An appellate court's review of a summary judgment is a de novo review based on the evidence presented to the trial court, using the same criteria used by the trial court in deciding whether a summary judgment should be granted. Buck's Run Enterprises, Inc. v. Mapp Const., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. A motion for summary judgment should be granted only if all the pleadings, depositions, answers to interrogatories, admissions, and any affidavits submitted to the trial court show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). If the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. See LSA-C.C.P. art. 966(C)(2).

DISCUSSION
Generally, in the terms of its liability policy, an insurer contractually agrees to provide its insured a legal defense for liability claims against the insured. Problems arise, however, when the insurer concludes that its policy does not provide coverage for the particular claim made against its insured. The insurer is faced with a dilemma between its duty to defend and its right to contest coverage with its insured. Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Ins. Co., 504 So.2d 1051, 1053 (La. App. 1st Cir.1987).
Moreover, the insurer has a duty to defend its insured even though there may ultimately be no liability on the insured's part. The insurer is obligated to provide this defense unless the allegations of the petition unambiguously exclude coverage. Id. Thus, although the allegations of the petition may ultimately turn out incorrect or untrue, the insurer is still obligated to provide a defense. Id. at 1054.
As noted in Dugas, the Louisiana State Bar Association's Committee on Professional Ethics and Grievances, in a formal opinion, has stated, "[w]here the insurer either denies coverage to the insured or reserves its rights to do so subsequently,... the Committee is of the opinion that it would be improper ... for the same attorney to represent both the insurer and *21 the insured."[6]Id. Accordingly, if the insurer chooses to represent the insured but deny coverage, it must employ separate counsel. Id.; see Belanger v. Gabriel Chemicals, Inc., 00-0747 (La.App. 1st Cir.5/23/01), 787 So.2d 559, 565, writ denied, 01-2289 (La.11/16/01), 802 So.2d 612.[7]
This position is further supported by Rule 1.7 of the Rules of Professional Conduct, which provides:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent confirmed in writing.
Louisiana State Bar Association, Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 1.7, LSA-R.S. foll. 37:222.
T & T contends that because Progressive failed to appoint separate counsel earlier than it did, Progressive has waived its right to assert any coverage defenses in this matter. Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege. Waiver occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered. Steptore v. Masco, 93-2064 (La.8/18/94), 643 So.2d 1213, 1216.
Waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured that could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest. Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such coverage defense. Id.
*22 There is no dispute in this matter that Progressive had knowledge of facts indicating noncoverage under the insurance policy prior to the filing of the lawsuit in this matter. Progressive contends, however, that its only duty in this matter was to issue a reservation of rights letter to T & T and that once it had done so, it was then permitted to provide only one attorney to represent both itself and its insured while it further investigated the coverage issue.
Progressive's argument fails to acknowledge the fact that it was not merely investigating the coverage issue. Indeed, on the same date that Progressive mailed T & T the reservation of rights letter, it also mailed T & T a letter stating that it had "concluded" its investigation into the accident and that it had "determined that there was no coverage available" under the policy. Thereafter, despite having already denied coverage, Progressive appointed a single attorney to represent itself and its insured in the litigation, and that attorney filed an answer asserting, for the second time, that the Progressive policy did not provide coverage for the accident. Despite this obvious conflict of interest, Progressive did not act to provide separate counsel for its insured for approximately seventeen months.
These actions on the part of Progressive not only constituted a conflict of interest, but they constituted conduct so inconsistent with an intent to enforce its right to assert its coverage defense as to induce a reasonable belief that the right had been relinquished. It is true that Progressive had advised T & T that coverage was denied prior to any suit being filed, as well as asserting again its coverage defense when it filed an answer using the same attorney it had appointed to represent T & T. However, for the next seventeen months, Progressive did nothing to advise T & T of the conflict of interest inherent in these actions, nor did the single attorney it appointed obtain any informed, written consent from T & T concerning this conflict of interest as required by Rule 1.7(b)(4) of the Rules of Professional Conduct. Moreover, Progressive did not retain separate counsel for T & T as required by Dugas and Belanger until seventeen months after filing the answer denying coverage, thereby evidencing the conflict of interest. Only then did the new attorney appointed by Progressive advise T & T that it may wish to consult another attorney on the issue of coverage. The result was that for approximately seventeen months, T & T was represented by an attorney who was not completely dedicated to its defense in this matter. Instead, it was represented by an attorney who knew of an obvious conflict of interest and never notified T & T of that fact. In addition, T & T was represented by an attorney who actively took steps detrimental and prejudicial to its position in the lawsuit. As waiver principles are to be applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured that could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest, we must find that Progressive waived its coverage defenses by assigning only one attorney to represent itself and its insured for seventeen months despite having knowledge of facts indicating noncoverage under the policy.

DECREE
For the reasons set forth above, the judgment granting the motion for partial summary judgment filed by T & T Seafood, Inc. is affirmed.[8] All costs of this *23 appeal are assessed to defendant, Progressive Security Insurance Company.
AFFIRMED.
HUGHES, J., dissents with reasons.
HUGHES, J., dissenting.
I respectfully dissent. I can find no prejudice to T & T on the merits.
The letter and answer put T & T on notice, but did not admit anything leading to liability. The affidavit and deposition likewise revealed only the true facts, which are uncontested, and did nothing to harm T & T on the merits.
The facts may be adverse to T & T on the issue of coverage, but I don't see how discovering the truth any quicker would have helped. And had a separate "conflict" counsel been present from day one, the result would be the same.
NOTES
[1] Progressive is referred to as Progressive Casualty Insurance Company at various times in the record-however, the judgment refers to it as Progressive Security Insurance Company. Furthermore, in its answer, Progressive states that it was incorrectly named in the petition as Progressive Casualty Insurance Company and gives its correct name as Progressive Security Insurance Company. Therefore, when we use the full name of the company, we will use the name as it appears in the answer and in the judgment.
[2] The lawsuit also named as defendants Joshua Tourere, Allstate Property & Casualty Insurance Company (Allstate), and Liberty Mutual Fire Insurance Company (Liberty Mutual). The plaintiffs later amended the petition to add Toyota Motor Sales, U.S.A., Inc. and/or Toyota Motor Corporation and/or Toyota Motor Company, LTD (Toyota) for failure of the airbag in the plaintiffs' vehicle to deploy. Joshua and Allstate were dismissed, with prejudice, when Allstate, Joshua's insurer, paid the limits of its policy. Toyota was also dismissed pursuant to a motion for summary judgment. Liberty Mutual is the uninsured motorist carrier on the plaintiffs' vehicle, and it remains in the lawsuit; however, it is not involved in this appeal.
[3] In addition to the affirmative defense asserting no coverage, paragraph nine of the answer contained a straight denial of the petition's allegation that the policy provided coverage for the accident.
[4] At the hearing on the motions for summary judgment, the attorneys noted that the attorney representing T & T and Progressive at the deposition was also representing Joshua at this time, as Joshua was T & T's employee.
[5] It should be noted that the letter from this newly-appointed attorney claims that Progressive was raising a coverage defense that T & T's policy was cancelled for non-payment of premiums prior to the accident. However, this does not appear ever to have been a defense raised by Progressive at any point in this litigation.
[6] See Opinion No. 342, May 30, 1974.
[7] Neither Dugas nor Belanger addressed the issue of waiver. Instead, both cases addressed the insurer's liability for attorney fees and costs that the insured may incur for defending the suit when the insurer fails to employ separate counsel.
[8] In its brief to this court, Progressive suggested that it was also appealing that portion of the judgment denying its motion for summary judgment; however, such judgments are not appealable. LSA-C.C.P. art. 2083(C). Counsel for Progressive acknowledged this fact in oral argument before this court.