# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 27, 2012

No. 11–31134

Lyle W. Cayce
Clerk

TIM SOSEBEE; MARK WRITESMAN; DALE PATILLO,

Plaintiffs - Appellees

v.

STEADFAST INSURANCE COMPANY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, GARZA, and PRADO, Circuit Judges.

GARZA, Circuit Judge:

Appellant Steadfast Insurance Co. ("Steadfast") appeals from the district court's order denying Steadfast summary judgment and granting summary judgment to Appellees Sosebee, Writesman, and Patillo ("Sosebee"). The district court held Steadfast waived its coverage defense. We REVERSE and render summary judgment in favor of Steadfast.

**I**

Tim Sosebee, Mark Writesman, and Dale Patillo were passengers on a chartered fishing boat insured by St. Paul Fire when they were involved in an accident with a utility boat owned by non-party Harvest Oil ("Harvest") and

No. 11–31134

insured by Steadfast Insurance Company ("Steadfast"). One week after the accident St. Paul Fire initiated a declaratory judgment action against Sosebee and the owner and operator of the fishing boat. Sosebee filed a third-party complaint against Harvest, alleging substantial personal injuries. Harvest answered the complaint on December 3, 2008 through Slattery, Marino & Roberts, its corporate counsel.

After Steadfast became aware of the accident and the lawsuit, Harvest received a letter, dated February 23, 2009, titled: "<u>Reservation of Rights: Please read carefully</u>." The letter is on the letterhead of Zurich North America, and is signed, "Sincerely, Zurich American Insurance Company." The letter contains the name Zurich American Insurance Company ("Zurich") five times and the name Steadfast two times. The letter refers to Sosebee's complaint and third-party complaint against Harvest in the 2008 case, cites the Steadfast policy number, quotes the watercraft exclusion in the policy, and states the exclusion "might apply." The parties do not dispute that the plain language of the watercraft exclusion quoted in the letter would exclude coverage for Sosebee's claims. The letter requests additional information regarding the ownership and length of the vessel involved in the accident. The letter states Zurich will "proceed with investigation of the case and allegations subject to a full Reservation of Rights."

Zurich is a separate insurance company, and both Zurich and Steadfast are members of Zurich North America. Zurich North America handles insurance claims for its member companies, including Zurich and Steadfast. At the time of the accident Harvest had a comprehensive general liability policy and an umbrella policy with Steadfast, as well as a commercial auto liability policy with

No. 11–31134

Zurich.

On March 31, 2009 Saratoga Resources, Inc., a Texas corporation and sole member of Harvest, filed for bankruptcy under Chapter 11.[1]  Harvest is represented in its bankruptcy case by its own counsel.  At the time Harvest filed for bankruptcy, all of the twenty largest unsecured claims against Harvest were for "Vendor/Trade Debt", not tort liability.  Creditors have a total of 207 claims against Harvest, totaling $226,754,130.85 in secured claims and $20,592,114 in unsecured claims.  Harvest's personal property totals $25,659,388 and its real property totals $146,118,745.  On August 9, 2009, Sosebee filed a claim against Harvest in the bankruptcy case for an amount "to be determined."  Harvest immediately filed an objection to Sosebee's claim.  The court has not yet held an adversary proceeding to quantify Sosebee's claim.

On April 14, 2009, Harvest filed a notice of filing of bankruptcy in Sosebee's case against Harvest.  On April 22, 2009,  Harvest moved to change its counsel from Slattery, Marino & Roberts to a firm employed by Steadfast, Anderson, Stephens & Grace (hereinafter Stephens & Grace).  On the same day the court held a status conference with the parties and stayed and administratively closed the case because of Harvest's bankruptcy filing.

On June 17, 2009, Sosebee filed this suit against the owner and operator of the boat, St. Paul, and Steadfast, alleging substantial personal injuries.  Sosebee did not include Harvest in this suit because Harvest had filed for

---

[1]Pursuant to FED. R. EVID. 201(b), we are entitled to take judicial notice of adjudicative facts from reliable sources "whose accuracy cannot reasonably be questioned."  But "[i]f the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."  FED. R. EVID. 201(e).

No. 11–31134

bankruptcy. Stephens & Grace, the same firm employed by Steadfast to represent Harvest in the 2008 case, represented Steadfast in this case. Stephens & Grace also represented a Harvest employee in a deposition taken by the owner and operator of the fishing boat. In its initial answer to the complaint Steadfast asserted no affirmative defenses and made no mention of the watercraft exclusion. When Sosebee asked Steadfast to produce any insurance policies that would provide coverage for Sosebee's injuries, Steadfast produced its primary and umbrella policies. At this time Steadfast was unaware that its policy excluded coverage because three separate Steadfast insurance adjusters mistakenly interpreted Steadfast's policy as covering Harvest's claim. The court set a trial date for October 18, 2010, and then granted motions to continue the trial to August 15, 2011.

On September 29, 2010, Sosebee received leave to file a first amended complaint, adding a claim against Steadfast under Harvest's umbrella policy. On April 1, 2011, after an insurance adjuster discovered Steadfast's policy excluded coverage, Steadfast filed an answer to the amended complaint, asserting for the first time the watercraft exclusion.

On April 14, 2011, the district court granted Steadfast's motion to substitute new counsel in place of Stephens & Grace. Stephens & Grace sent a letter to Harvest on April 21, 2011 stating that:

> As you know, this firm was assigned to represent [Harvest] and [Steadfast] in the Sosebee Writesman and Patillo suit pending in the United States District Court for the Eastern District of Louisiana. The lawsuit has been proceeding forward against Steadfast only under the direct action statute after the notice of bankruptcy of Harvest. Steadfast has decided to assert policy

4

No. 11–31134

defenses and they have reassigned their defense . . .

WE WILL NO LONGER REPRESENT HARVEST OR STEADFAST IN THIS MATTER. WE STRONGLY URGE YOU TO CONSULT YOUR OWN ATTORNEY TO PROTECT YOUR INTERESTS.

On April 19, 2011, Sosebee moved to strike Steadfast's amended answer, arguing Steadfast did not assert the watercraft exclusion in a timely manner. The district court denied the motion on the basis that the amended answer was not so untimely as to prejudice Sosebee. The district court continued the trial date to permit Sosebee to take discovery related to the watercraft exclusion.

In a deposition in this case, Harvest's designated representative, Brian Daigle, testified that the entire time Stephens & Grace represented Harvest, Harvest was unaware that Steadfast intended to invoke the exclusion.[2] Mr.

---

[2]The relevant portion of Mr. Daigle's deposition is excerpted below:

Q. Now did Steadfast Insurance Company ever send you a reservation of rights letter similar to the one that Zurich American Insurance Company sent you?
A. No.
. . .
Q. Did Steadfast Insurance Company ever inform you that they were reserving their rights to coverage on this particular claim?
A. The only letter I received was from Zurich right there.
Q. Okay. At some point, did Harvest Oil eventually learn that Steadfast was being sued directly by the plaintiffs in this case on this particular claim?
A. At some point, yeah.
. . .
Q. So if we talked about earlier May 1st of 2008 is when the accident occurred– at any point in 2008, did Steadfast inform Harvest that this particular accident may not be covered under its policies?
A. Not that I'm aware of.
Q. Okay. At any point in 2009, did Steadfast inform Harvest that this accident may not be covered under its policies?
A. No.

No. 11–31134

Daigle testified Harvest was under the impression the February 23, 2009 reservation of rights letter related to Harvest's policies with Zurich, not Steadfast. Mr. Daigle further testified Steadfast never informed Harvest that Steadfast contested coverage for Sosebee's claim.

Steadfast moved for summary judgment arguing because Steadfast did not owe coverage to Harvest, Sosebee cannot recover from Steadfast. Sosebee moved for summary judgment arguing Steadfast waived its coverage defense. Holding Steadfast waived its right to assert the watercraft exclusion as a defense, the district court denied Steadfast summary judgment and granted summary judgment for Sosebee. Steadfast appealed.

## II

To determine whether Steadfast waived its coverage defense the district court applied a two-prong test, asking (1) whether Steadfast's conduct was so inconsistent with asserting the exclusion as to induce a reasonable belief that Steadfast relinquished its right to assert the exclusion, *see Steptore v. Masco*

---

Q. At any point in 2010, did Steadfast inform Harvest that this accident may not be covered under its policies?
A. No.
. . .
Q. At any point during that process of assisting in coordination of depositions, did anyone from Steadfast Insurance Company or their attorneys inform you that this claim might not be covered?
A. No.
. . .
Q. Had Steadfast brought this coverage issue to Harvest's attention any time between 2008 and 2011, what if anything would have Harvest done?
A. We would have immediately contacted our corporate attorneys first.

Daigle Dep. 45:17–51:14, July 20, 2011.

No. 11–31134

*Constr. Co.*, 643 So. 2d 1213, 1216 (La. 1994); *Emery v. Progressive Cas. Ins. Co.*, 49 So. 3d 17, 21 (La. App. Ct. 2010), and (2) whether Steadfast's inconsistent conduct prejudiced Harvest. *Scottsdale Ins. Co. v. Gulf Sea Temporaries, Inc.*, No. 98-1364, 1999 WL 130633, at *5 (E.D. La. Mar. 10, 1999). On appeal Steadfast contends the district court erred in answering both prongs affirmatively and holding Steadfast thereby waived its coverage defense. Sosebee contends the district court erred in holding Steadfast's February 23, 2009 letter was a valid reservation of rights. Sosebee contends Steadfast never reserved its right to assert the exclusion as a coverage defense.

We review the district court's grant of summary judgment de novo. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). "The district court's interpretation of an insurance contract is a question of law that we also review de novo." *Id.* Summary judgment is appropriate only if the evidence in the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties agree Louisiana law governs the dispute.

### III

Steadfast contends it properly reserved its rights to assert the watercraft exclusion as a defense to coverage. We address the issue of Steadfast's reservation of rights letter before the question of waiver because under Louisiana law waiver of noncoverage defenses is automatic and requires no showing of prejudice where the insurer assumed the insured's defense without first issuing a reservation of rights letter. *See Steptore*, 643 So. 2d at 1216.

Sosebee contends the district court erred in holding Steadfast's February 23, 2009 letter reserved its rights under the watercraft exclusion. Sosebee

No. 11–31134

contends Steadfast's letter to Harvest on February 23, 2009 failed to reserve Steadfast's rights under the policy for two reasons. First, Sosebee asserts Zurich authored the letter and reserved Zurich's rights rather than Steadfast's rights. Sosebee maintains the references to Zurich are not mere typographical errors. At the time of the boat accident, Harvest had policies with both Steadfast and Zurich. Sosebee thus maintains that the letter did not sufficiently apprise Harvest of which insurer was waiving its rights with respect to which policy. Second, Sosebee cites a Sixth Circuit case for the proposition that a reservation of rights that only refers to an investigation of an accident will not function as a reservation of rights with respect to a defense of the matter. *Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666–67 (6th Cir. 1981). According to the court in *Transamerica*, if the initial letter does not mention a defense, the insurer must issue a second reservation of rights letter if it undertakes to defend the insured. *Id.*

Under Louisiana law, an insurer can waive any provision of an insurance contract even if it has the effect of bringing within coverage risks originally excluded under the policy. *Steptore*, 643 So. 2d at 1216. If an insurer with knowledge of facts indicating noncoverage assumes an insured's defense without first reserving its rights to assert a noncoverage defense, the insurer waives its right to assert the defense. *Id.* If an insurer assumes an insured's defense with knowledge of facts indicating noncoverage without first obtaining a non-waiver agreement, the insured may assume the insurer is acting in the insured's best interest with respect to coverage defenses the insurer has seemingly relinquished. *Arceneaux v. Amstar Corp.*, 66 So. 3d 438, 451 (La. 2011). Thus, "the insurer's notice of its intent to avail itself of the defense of noncoverage

No. 11–31134

must be timely." *Scottsdale*, 1999 WL 130633, at *3. Courts must apply waiver principles stringently to prevent conflicts of interest between insurer and insured that could potentially affect legal representation. *Steptore*, 643 So. 2d at 1216. Courts should not, however, require overly technical or talismanic language for insurers to effectively reserve their rights. *See F.D.I.C. v. Duffy*, 47 F.3d 146, 151 (5th Cir. 1995) (rejecting assertion that insurer must state in reservation of rights that insurer "reserved its rights to void the policy").

Steadfast reserved its watercraft exclusion defense through its letter to Harvest on February 23, 2009. The letter unambiguously refers to the policy that Steadfast issued to Harvest, cites the watercraft exclusion in the policy, and reserves rights under the exclusion. Even though Steadfast's February 23, 2009 letter to Harvest was on Zurich's letterhead, Zurich signed it, and the letter mentioned Zurich's name multiple times, the letter nevertheless put Harvest on notice that Steadfast was reserving its rights under the policy listed in the letter. The letter referred to the policy issued by "Steadfast Insurance Company" and listed the policy number and dates of coverage. The letter reproduced verbatim the watercraft exclusion from Steadfast's policy. The letter did not include any reference to policies issued by Zurich and the letter referenced the lawsuit against Harvest by name. The letter stated Zurich would proceed with the "investigation of the case and allegations subject to a full [r]eservation of [r]ights." Because Louisiana follows a functional approach to the reservation of rights and we have rejected requirements for technical language, *see Duffy*, 47 F.3d at 151, the fact that Steadfast did not explicitly state it was reserving its rights with respect to the defense of Harvest did not render the reservation of rights void once Steadfast undertook to defend Harvest. Therefore, Sosebee's

9

No. 11–31134

contention that Steadfast failed to reserve its rights with respect to the watercraft exclusion is without merit.

## IV

Because we hold Steadfast validly reserved its right to assert the watercraft exclusion, we must now address whether Steadfast waived its reservation of rights. Though Steadfast concedes Sosebee has standing under the Louisiana Direct Action Statute to raise the issue of waiver, our waiver analysis is complicated by the fact Harvest, not a party to this case, is currently in bankruptcy. Moreover, Harvest was in Chapter 11 bankruptcy at all times relevant to Sosebee's claim that (1) Steadfast engaged in conduct inconsistent with asserting a noncoverage defense and (2) Steadfast's inconsistent conduct prejudiced Harvest. The Louisiana Direct Action Statute explicitly states that when an insured is in bankruptcy, an injured person or his survivors may bring an action directly against the insurer without joining the insured. LA. REV. STAT. § 22:1269(B)(1) (Supp. 2012). We have held a direct action claimant may assert waiver even where the insured is not a party to the litigation and has received a discharge in bankruptcy. *Duffy*, 47 F.3d at 149–50; *F.D.I.C. v. Duffy*, 835 F. Supp. 307, 308, n.1 (E.D. La. 1993), *aff'd*, 47 F.3d 146 (5th Cir. 1995) ("Duffy received a discharge in bankruptcy, which relieved him of any potential liability . . . . Hence the sole defendant remaining in this proceeding is Duffy's alleged insurer"). Whether an insurer may waive its coverage defenses through its conduct in a direct action suit in which the insured is not a party *while* the insured is in bankruptcy is, however, a question of first impression.

## A

In order to determine if Steadfast waived its noncoverage defenses vis-à-

No. 11–31134

vis Harvest through its conduct in this case we must we must examine (1) the protections Louisiana Direct Action statute provides to Sosebee and (2) the protections the Bankruptcy Code provides to Harvest while it is in Chapter 11 bankruptcy.

The purpose of Louisiana's Direct Action statute is to safeguard the rights of injured persons. *Duffy*, 47 F.3d at 150. The Louisiana direct action statute creates a "contractual relationship which inures to the benefit of any and every person who might be negligently injured by the insured as completely as if such injured person had been specifically named in the policy." *Id.* (quoting *Shockley v. Sallows*, 615 F.2d 233, 238 (5th Cir. 1980)). Section 655 of Title 22, Louisiana Revised Statutes, provides in part:

> A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy . . .
>
> B. (1) The injured person or his survivors or heirs . . . shall have a right of direct action against the insurer within the terms and limits of the policy . . . however, such action may be brought against the insurer alone only when at least one of the following applies:
>> (a) The insured has been adjudged bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction . . . .

LA. REV. STAT. § 22:1269 (Supp. 2012). The plain language of the statute evinces Louisiana's intent for the insolvency of the insured not to "release the insurer from the payment of damages" to injured parties. *Id.* Section 22:1269 is crafted to protect Louisiana's vital interest in liability insurance that covers injuries to

11

people in the state. *Watson v. Emp'rs Liab. Assur. Corp.*, 348 U.S. 66, 73 (1954). The Supreme Court held even where an insurance contract expressly prohibited direct actions before a determination of the insured's liability, Louisiana's interest in protecting injured parties under Section 22:1269 overrode Massachusetts's interest in enforcing its contract rules. *Watson,* 348 U.S. at 72–73 (holding Louisiana direct action did not deny due process to foreign liability insurer even where contract of insurance prohibited direct action and was drafted and executed in Massachusetts).

The Louisiana Supreme Court has held that "the direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured." *Descant v. Adm'rs of Tulane Educ. Fund*, 639 So. 2d 246, 249 (La. 1994). Under Section 22:1269, insurers may raise any defenses that arise from the nature of the obligation, that are personal to the insurer, or "that are common to all the solidary obligors." *Id.* 249–50. Insurers may not, however, raise defenses to liability that are personal to the insured, such as the fact the insured is in bankruptcy. *Id.* at 250 n.9. Thus, if there is coverage for Sosebee's claim, the fact Harvest is in bankruptcy should not affect Steadfast's obligation to pay on the claim. This does not mean Steadfast may not raise the fact Harvest is in bankruptcy as a defense to *waiver*. The question of waiver is, of course, antecedent to coverage.

Because Harvest has been in Chapter 11 bankruptcy at all times relevant to Sosebee's claim of waiver, we must consider how the protections of bankruptcy might affect our waiver analysis. Chapter 11 provides robust protections to debtors while bankruptcy is ongoing, but strikes "a balance between a debtor's

No. 11–31134

interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51 (2008) (internal citations omitted). Unlike Chapter 7 bankruptcy, the goal of which is liquidation of the debtor's assets, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 389 (1993), the goal of Chapter 11 bankruptcy is to marshall the debtor's resources "to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors." *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1377 (11th Cir. 1994); *accord Pioneer Inv. Servs.*, 507 U.S. at 389.

When a debtor files for bankruptcy, an estate is created under 11 U.S.C. §§ 541, 541(a) (2006). Except as otherwise provided in the statute, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). We have held that while insurance policies are generally property of the estate, the proceeds of liability insurance policies, unlike first party policies, generally are not.

> [The] definition [of the bankruptcy estate] is intended to be broadly construed, and courts are generally in agreement that an insurance policy will be considered property of the estate. Insurance policies are property of the estate . . . . Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.
> Acknowledging that the debtor owns the policy, however, does not end the inquiry. The question is not who owns the policies, but who owns the liability proceeds . . . .
> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim . . . .
> Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies

13

No. 11–31134

> in which the debtor is a beneficiary. Proceeds of such insurance policies, if made payable to the debtor rather than a third party such as a creditor, are property of the estate and may inure to all bankruptcy creditors. But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.

*In re Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993) (footnotes and internal quotation marks omitted); *accord In re Sfuzzi, Inc.*, 191 B.R. 664, 666 (Bankr. N.D. Tex. 1996) (holding liability insurance proceeds not property of bankruptcy estate). Only in the limited instance of a mass tort action where hundreds or thousands of claims against the debtor's insurer might exhaust insurance proceeds and thus threaten the debtor's estate over and above limits of liability insurance policies have courts held the *proceeds* of liability insurance policies are property of the bankruptcy estate. *E.g.*, *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988), ("Manville's insurance policies and their proceeds were substantial property of the Manville estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments.") (internal citation and quotation marks omitted); *Edgeworth*, 993 F.2d at 56 n.21 ("In the mass tort context, the decisions by several courts to include the proceeds as property of the estate appear to be motivated by a concern that the court would not otherwise be able to prevent a free-for-all against the insurer outside the bankruptcy proceeding."). At the time Harvest filed for bankruptcy, all of the twenty largest unsecured claims against Harvest were for "Vendor/Trade Debt", not tort liability. Sosebee's personal injury claim against Harvest is the result of an isolated accident to which the mass tort precedents are inapplicable. There is no evidence that numerous tort

14

No. 11–31134

claims threaten the limits of Harvest's liability insurance or that Steadfast needs to be protected from a siege of tort claims under Harvest's policy. Therefore, the proceeds of the policies at issue in this case are not the property of Harvest's bankruptcy estate.

Because liability insurance proceeds are generally not property of the bankruptcy estate, if a direct action claimant succeeds in obtaining a judgment against an insurer, the claimant recovers from the insurer directly rather than from the bankruptcy estate. *See Landry v. Exxon Pipeline Co.* 260 B.R. 769, 779 (Bankr. M.D. La. 2001).

> [R]ecovery against the Insurers causes a dollar for dollar reduction of any obligation on the part of [the debtor] to repair any damage suffered by the Plaintiffs. In turn, the value of the remaining claims against the assets of [the debtor] increases by the amount of the diminished liability of [the debtor]. Recovery against the Insurers lessens the sum total of claims for which the estate is or may be liable, while at the same time potentially increases the pro rata recovery of creditors that are situated, as a matter of priority, the same as the Plaintiffs' claims (or that are situated in a position of lesser priority), but are not afforded by applicable non-bankruptcy law the right to liability insurance coverage.

*Id.* Thus, in this direct action case Sosebee is seeking recovery from the proceeds of the insurance policy, not from Harvest's bankruptcy estate.

Pursuing a direct action claim against a liability insurer is not the only recovery option available to a personal injury claimant when the insured is in bankruptcy: a personal injury claimant may make a claim against the debtor in the bankruptcy case. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir. 1989). Sosebee has also filed a claim against Harvest in the bankruptcy case. If, as in this case, the debtor objects to the claim, the court must quantify the claim by lifting the bankruptcy stay so that a personal injury action may

15

proceed. *See, e.g.*, *id.* (lifting bankruptcy stay to permit personal injury action to proceed). To discourage forum shopping and prevent a party "from receiving a windfall merely by reason of the happenstance of bankruptcy," state law applies in the adversary proceeding unless an overriding bankruptcy policy requires otherwise. *Butner v. United States*, 440 U.S. 48, 55 (1979) (citing *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). If the personal injury claimant succeeds in proving the debtor is liable on the claim and there is liability insurance coverage, the insurer will pay the claimant directly, rather than the bankruptcy estate. *See Landry*, 260 B.R. at 800. The money paid under the liability policy is the money of the insurance company. *Id.* If, however, the court finds the debtor is liable but there is no insurance coverage, the claimant must seek a payout from the bankruptcy estate. *See Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) (citing 11 U.S.C. § 101(10)) (tort victim is creditor of bankruptcy estate if victim had claim against bankruptcy estate that arose no later than the filing of petition). Because tort victims are only unsecured creditors, they are disadvantaged vis-à-vis the debtor's secured creditors who have a higher priority in the payout. *See* 11 U.S.C. §§ 725–26, 507 (2006); *see, e.g.*, *In re Chance Indus., Inc.*, 367 B.R. 689, 696 (Bankr. D. Kan. 2006) ("No funds were recovered and available for distribution to unsecured creditors."). Thus, if there is no coverage for Sosebee's claim, Sosebee must seek a payout from the bankruptcy estate. In Harvest's bankruptcy, the claims against the estate amount to tens of millions of dollars more than the assets of the estate, and the amount Harvest owes to secured creditors dwarfs the amount Harvest owes to unsecured creditors. If there is no coverage, Sosebee may receive only a fraction of the amount Harvest owes it from the bankruptcy payout. Conversely, if there is insurance coverage, Sosebee would be able to recover the judgment amount directly from Steadfast,

No. 11–31134

*see Landry*, 260 B.R. at 800, leaving more money in the bankruptcy estate for Harvest's other creditors.

When a debtor files for bankruptcy under Chapter 11, an automatic stay goes into effect under 11 U.S.C. § 362 and suspends nonbankruptcy courts' authority to continue judicial proceedings then pending against the debtor including

> (1) the commencement or continuation. . . [of a] proceeding against the debtor that was or could have been commenced before the commencement of the case . . .
> (3)  any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title

11 U.S.C. § 362.  This stay goes into effect without any action required by the bankruptcy court.  3 Collier on Bankruptcy, ¶ 362.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).  Parties need not receive formal service of process in order to be subject to the stay.  *Id.*  Unless a court grants relief from the stay, the stay continues until the property at issue is no longer property of the bankruptcy estate or until the bankruptcy case is closed or dismissed.  11 U.S.C. § 362(c).

The automatic stay does not generally apply to third parties such as debtors' codefendants or guarantors, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 166 (2009) (Stevens, J., dissenting), but some courts have held the stay applies to the debtor's insurers.  3 Collier on Bankruptcy, ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).  In *MacArthur Co. v. Johns-Manville Corp.*, the Second Circuit held the liability insurance proceeds constituted property of the estate and therefore actions by third parties against

No. 11–31134

debtor-insurers were automatically stayed when the debtor filed its bankruptcy petition.   837 F.2d at 92 (citing *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984).  Where a court finds insurance proceeds to be property of the bankruptcy estate the automatic stay will apply to direct actions against insurers, *see* 11 U.S.C. § 362(3), but where the proceeds of the insurance policies are not property of the bankruptcy estate, direct actions against insurers will not be affected by the stay.  *See* 11 U.S.C. § 362.  Therefore, because the proceeds from Steadfast's policy are not property of Harvest's bankruptcy estate, the automatic stay does not apply to the direct action in this case.  Because the automatic stay did, however, apply to Sosebee's claim against *Harvest* in the 2008 case, that case has remained stayed since Harvest filed for bankruptcy and the court cannot lift the stay until the bankruptcy court closes or dismisses Harvest's bankruptcy case.

## B

Also relevant to Sosebee's claim of waiver is the possible res judicata or collateral estoppel effect a judgment in this case would have on Sosebee's claim in the bankruptcy case.

Federal courts look to the law of state in which the federal diversity court sat to determine the preclusive effect of a federal diversity judgment.  *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002).  If claim preclusion applies in a bankruptcy case the judgement in the prior action would be dispositive as to the existence and amount of the debtor's obligation to the particular creditor, *see, e.g.*, *In re Comer*, 723 F.2d 737, 739–40 (9th Cir. 1984), but not as to the dischargeability of the debt.  *Brown v. Felson*, 442 U.S. 127, 129 (1979).  "The four prerequisites for the application of res judicata are: (1) the parties must be identical in both suits, or in privity; (2) the

prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *Schneidau v. Vanderwall*, 17 So. 3d 61, 64 (La. Ct. App. 2009); LA. REV. STAT. ANN. § 13:4231. In this case Harvest is not a party, so for claim preclusion to apply there must be privity between Steadfast and Harvest. Louisiana courts have interpreted privity to mean "a person whose liability is purely derivative from the act of another person, or a person who is the primary actor in creating this kind of liability, such as in cases of employer-employee and lessor-lessee relationships." *Baker v. Wheless Drilling Co.*, 303 So. 2d 511, 515 (La. Ct. App. 1974). Insurers may be in privity with the insured when the injured party sues the under the Louisiana Direct Action Statute, but only where the policy limits are not exceeded and the interests of the insurer and the insured are aligned. *See Cornish v. Freeman*, 451 So. 2d 148, 150 (La. Ct. App. 1984); *Roland v. Owens*, 786 So. 2d 167, 170 (La. Ct. App. 2001) ("The insured and the insurer not only share the same quality as parties, but in essence their identities are virtually merged into one, *to the extent of the policy limits*.") (emphasis added) (internal citation and quotation marks omitted). Because Steadfast has asserted policy defenses in this case, there is no credible argument that the interests of Harvest and Steadfast are sufficiently aligned to establish privity for purposes of res judicata. Thus, claim preclusion will not apply to Sosebee's claim against Harvest in the bankruptcy case.

Issue preclusion will likewise not bar Harvest from relitigating the issues decided in this case in the bankruptcy case. Louisiana requires four elements to be met "before an earlier valid and final judgment will preclude relitigation of an issue: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been

actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment." *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 594–95 (E.D. La. 2008) (internal citations and quotation marks omitted). Because Steadfast and Sosebee are not identical parties, collateral estoppel will not prevent relitigation of the waiver issue in the adversary action. Unlike the federal issue preclusion rules, Louisiana still requires mutuality for issue preclusion. *Williams v. City of Marksville*, 839 So. 2d 1129, 1132 (La. Ct. App. 2003). Therefore, neither claim preclusion nor issue preclusion will prevent Harvest from relitigating the issues decided in this case.

## C

Waiver requires (1) misleading conduct on the part of the insurer and (2) prejudice to the insured. *Emery,* 49 So. 3d at 21; *Scottsdale*, 1999 WL 130633, at *5. The burden of proving waiver is on the party claiming waiver. *Duffy*, 47 F.3d at 150.

### i

Steadfast contends the district court erred in holding Steadfast's conduct was so inconsistent with asserting the exclusion as a defense as to reasonably lead Harvest to believe Steadfast relinquished its right to assert the exclusion. Steadfast claims it never informed Harvest it was withdrawing its reservation of rights or covering Sosebee's claims. Steadfast admits three of its insurance adjusters misinterpreted Steadfast's policy as covering Harvest's claims, but maintains Steadfast never communicated the mistaken interpretation to Harvest. Steadfast maintains Louisiana case law has restricted waiver to cases where the insurer fails to issue a reservation of rights before providing a defense to the insured.

No. 11–31134

Steadfast extensively relies on *F.D.I.C. v. Duffy,* 47 F.3d 146 (5th Cir. 1995) for the proposition that an insurer cannot waive its reservation of rights through delay in asserting policy defenses against the injured party. In *Duffy*, we examined the issue of whether an insurer waived its defense that the policy was void ab initio. *Id.* at 150. Steadfast cites language from *Duffy* for the proposition that waiting four years after the grounds for a defense arises to assert a noncoverage defense does not place an insurer in danger of waiving its reservation of rights. *Duffy* does not support this proposition. The insurer in *Duffy* waited four years to raise its affirmative defense because the court dismissed the suit *sua sponte* before the insurer had the opportunity to file responsive pleadings. *F.D.I.C. v. Duffy*, 835 F. Supp. 307, 325 (E.D. La. 1993), *aff'd*, 47 F.3d 146 (5th Cir. 1995). The insurer only had the opportunity to assert its noncoverage defense four years later on remand, at which time the insurer immediately filed responsive pleadings denying coverage. *Id.* Therefore *Duffy* does not support Steadfast's contention that voluntarily waiting years to assert a noncoverage defense in a direct action suit could never waive an otherwise valid reservation of rights.

In *Steptore*, the Louisiana Supreme Court held that for an insurer to waive a provision of an insurance contract through its inconsistent conduct the insurer must either have "an actual intention to relinquish the right" or the conduct must be "so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished." *Steptore*, 643 So. 2d at 1216; *Emery*, 49 So. 3d at 21 (rejecting contention that insured could not waive coverage defense through subsequent conduct after issuing reservation of rights letter). An insurer may waive a reservation of rights unintentionally, even

21

No. 11–31134

without explicitly withdrawing its reservation of rights. *Steptore*, 643 So. 2d at 1216.

Sosebee's claim of waiver revolves entirely around Steadfast's conduct in this suit, to which Harvest is not a party. Both parties are in agreement that Steadfast's delay in asserting the watercraft exclusion as a defense in this case was the result of multiple Steadfast policy adjusters misreading the policy. Steadfast did not act with a knowing intention to relinquish its right to assert the watercraft exclusion.

Because Steadfast had no intention to relinquish its right to assert the exclusion, we must examine whether Steadfast's conduct was sufficiently inconsistent with asserting the exclusion to induce a reasonable belief in Harvest that Steadfast had relinquished its right to assert the exclusion. Louisiana law implies a subjective and an objective component to this inquiry. *See Arceneaux*, 66 So. 3d at 450–51 (holding waiver requires "conduct so inconsistent with the intent to enforce the right so as to *induce* a *reasonable* belief that the right has been relinquished.") (emphasis added). The requirement that the insured's belief be *reasonable* forms the objective component of the inquiry. The subjective component of the inquiry requires the insurer's conduct to actually *induce* or cause the insured's belief that the insurer relinquished its right.

Regarding the objective component, Sosebee alleges Steadfast's conduct in this case was inconsistent with an intention to assert the watercraft exclusion as a defense vis-à-vis Harvest. In Steadfast's initial answer to Sosebee, Steadfast pled no affirmative policy defenses. Only after its right to amend its answer as a matter of course passed, *see* FED. R. CIV. P. 15(a)(1), did Steadfast move to amend its answer to add policy defenses. When Sosebee asked Steadfast to produce any insurance policies that would provide coverage for Sosebee's

22

injuries, Steadfast produced the applicable policies covering Harvest. Although a judgment in this case would have no preclusive effect in the bankruptcy case, Harvest might have viewed failure to timely assert the watercraft exclusion in this case as inconsistent with an intention to assert the exclusion as a defense in future litigation.[3] Whether Steadfast's actions in this case are sufficiently inconsistent with asserting the watercraft exclusion as a defense to satisfy the objective test is a close question. We need not resolve this question because the subjective component of our inquiry clearly does not support a claim of waiver.

Regarding the subjective component, the deposition testimony of Harvest's representative, Brian Daigle, never references Steadfast's conduct in this case as a reason for Harvest's belief that Steadfast was not asserting policy defenses. Mr. Daigle suggests Harvest believed Steadfast was covering Sosebee's claim because (1) it read the February 23, 2009 reservation of rights letter as only pertaining to Harvest's policies with Zurich and (2) Steadfast never informed Harvest that Steadfast would not be providing coverage for Sosebee's claim. Mr. Daigle did not claim Steadfast employees informed Harvest that Steadfast *would* be covering Sosebee's claim, only that Steadfast employees never informed Harvest that Steadfast *would not* be covering Sosebee's claim. As discussed in our analysis of the February 23, 2009 reservation of rights letter, that letter

---

[3]Taking such an inconsistent position could give rise to a claim of judicial estoppel. *See, Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."). We have no occasion here to guess what advantage Steadfast might have gained by intentionally failing to assert the watercraft exclusion in this case, losing, and then raising the exclusion in the bankruptcy case. We make this point only to acknowledge that Steadfast failing to timely assert the watercraft exclusion in this case could induce a belief that it did not intend to raise the exclusion as a defense in future litigation.

No. 11–31134

references Harvest's policy with Steadfast by number and reproduces verbatim the text of the watercraft exclusion. In this letter Steadfast properly reserved its rights to assert the watercraft exclusion as a defense. Once Steadfast reserved its rights under the watercraft exclusion, it did not need to again inform Harvest that it might not be covering Sosebee's claim. Mr. Daigle's deposition strongly suggests that it was a careless reading of the reservation of rights letter, rather than Steadfast's conduct in this case that misled Harvest as to coverage. To establish waiver Louisiana requires that the insured be misled about coverage *because* of the insurer's inconsistent conduct. *See Arceneaux*, 969 So. 2d at 767 (citing *Steptore*, 643 So. 2d at 1216). Mr. Daigle's deposition testimony was sufficiently clear on this point as to leave no issue of material fact in dispute: Harvest's understanding that Steadfast would cover Sosebee's claim was not related to Steadfast's conduct in this case. Thus, the district court erred in granting summary judgment to Sosebee and in denying to summary judgment to Steadfast.

**ii**

Even if Sosebee had produced sufficient evidence of inconsistent conduct to survive summary judgment, Sosebee produced no evidence that Steadfast's conduct in this case prejudiced Harvest.

Steadfast contends the district court erred in holding Steadfast's conduct prejudiced Harvest. In support of this contention Steadfast states that Harvest was never a defendant in this case and Sosebee's case against Harvest is stayed pending the resolution of Harvest's bankruptcy case. Steadfast maintains its conduct could not have prejudiced Harvest when Sosebee has no active lawsuits pending against Harvest. Steadfast stresses Harvest provided the information with respect to the vessel involved in the accident prior to the time Steadfast

assumed Harvest's defense. Thus, Steadfast asserts the documents and fact witnesses Harvest provided to Steadfast after Steadfast assumed its defense did not give Steadfast any information Steadfast could use against Harvest.

The party asserting waiver must prove the insurer's inconsistent conduct prejudiced the insured. *Scottsdale*, 1999 WL 130633, at *5. If the injured party raises the issue of waiver pursuant to a claim under the Louisiana Direct Action statute, the relevant question remains whether the insurer's conduct prejudiced the *insured. See Todd v. Steamship Mut. Underwriting Ass'n*, No. 08-1195, 2011 WL 1226464, at *6 (E.D. La. Mar. 28, 2011) (citing LA. REV. STAT. § 22:1269(B)(1) (2009)) (holding direct action plaintiff has no independent cause of action against insurer but merely stands in shoes of insured). The question of whether an insurer's conduct prejudiced the *injured party* is irrelevant to the question of whether the insurer waived its reservation of rights vis-à-vis the insured.

This appeal raises the question of whether the party asserting waiver may, under Louisiana law, prove prejudice to the insured without showing actual harm. Louisiana case law addressing the prejudice prong of waiver does not clarify whether the insured must have detrimentally relied on the insurer's misleading conduct to prove prejudice. *Cf. Tudor Ins. Co. v. First Advantage Litig. Consulting, LLC*, No. 11 CIV. 3567 KBF, 2012 WL 3834721, at *11 (S.D.N.Y. Aug. 21, 2012) (citing *Federated Dep't. Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D. 3d 32, 37 ( N.Y. App. Div. 2006))("Moreover, 'a key element of common-law estoppel' is a showing by the insured of prejudice, or detrimental reliance, from the belated disclaimer."); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480 (5th Cir. 1992) (requiring insured show actual harm to prove prejudice under Texas law). In *Arceneaux*, the court

No. 11–31134

discusses but does not decide whether actual harm is required to prove the insured was prejudiced. 969 So. 2d at 767 (citing 14 Couch on Ins.3d §§ 202:67-69) (some jurisdictions hold "the loss of the right of the insured to control and manage the defense is, in itself, prejudice without any further proof.") (internal quotation marks omitted). Keeping in mind this ambiguity, the central point of our prejudice inquiry is whether insurer's conduct interfered with the insured's rights. Lee R. Russ, et. al, 14 Couch on Ins. § 202:70 (3d ed. 2008). ("Whether specific detriments, or combinations thereof, constitute prejudice is extremely fact specific, rendering it difficult or impossible to provide any black letter rules of law. Practitioners must review each factual pattern to determine whether the insurer's actions or inactions interfered with the insured's rights.").

Louisiana case law suggests there are two ways to prove an insurer's misleading conduct prejudiced the insured. First, an insurer may prejudice an insured by depriving the insured of the opportunity to assume and manage its own defense. *Arceneaux*, 66 So. 3d at 452. Louisiana case law does not clearly define the contexts in which this form of prejudice may occur.[4]

> [A]n insurers actions in continuing to defend an insured after it acquired information relevant to a potential defense against coverage, may be thought to imply an acknowledgment of coverage despite that defense. The jurisprudence has found an insurers belated disclaimer prejudicial because the insured lost its opportunity to assume and/or manage its own defense as a direct result of its reliance on the insurers assumption of the defense. However, there are no universally accepted rules.

*Arceneaux v. Amstar Corp.*, 969 So. 2d at 768 (internal citations omitted).

---

[4] The two instances in which Louisiana case law mentions this form of prejudice are in contexts where the insurer never issued a reservation of rights. *Arceneaux*, 66 So. 3d at 452; *Arceneaux*, 969 So. 2d at 768.

Second, an insurer prejudices an insured if the insured was actually harmed by the insurer's inconsistent conduct. *See Scottsdale*, 1999 WL 130633, at *5. In *Scottsdale* the insured's claim of waiver was not based on delay in asserting a policy defense, but based on a claimed conflict of interest. *Id.* at *4. The court held the insurer indeed created a conflict of interest by retaining the same attorney to represent itself and the insured even though the insurer raised policy defenses. *Id.* at *5. Nevertheless the court held the insured was not prejudiced by this conflict of interest because the insurer also defended the claim on the merits and there was no evidence that the settlement was unfair to the insured. *Id.*

Sosebee failed to show evidence either of *Arceneaux* or "real harm" prejudice. Steadfast did not deprive Harvest of the opportunity to assume and manage its own defense. Stephens & Grace did not begin representing Harvest until after the district court stayed Sosebee's claim against Harvest pursuant to 11 U.S.C. § 362. This case remained stayed the entire time Stephens & Grace was representing Harvest. While it is true that Sosebee has filed a claim against Harvest in the bankruptcy case that may evolve into an adversary proceeding, Harvest's own counsel represents Harvest in the bankruptcy case. Further, neither claim preclusion nor issue preclusion will apply to prevent relitigation in the impending adversary proceeding of the coverage issue or the merits of Sosebee's claim against Harvest. Therefore, Harvest will have an opportunity to defend itself both from Sosebee's personal injury claim and Steadfast's claim of waiver. The only evidence Sosebee provided of prejudice to Harvest was that Harvest cooperated with Steadfast to aid Steadfast in defending Sosebee's claim *against Steadfast* by making its personnel available to Steadfast for questions,

27

allowing Stephens & Grace to represent a Harvest employee in a deposition taken by the owner and operator of the fishing boat, and providing discovery material to Steadfast as an aligned party rather than as an adversarial party. Sosebee provided no evidence that any of these actions actually harmed Harvest or will somehow detrimentally effect Harvest in its attempt to reorganize or in its future negotiations with Sosebee as unsecured creditor in the bankruptcy case. In short, Sosebee did not provide evidence that any of the aid Harvest provided to Steadfast in this case actually harmed Harvest's interests. We do not have occasion to hold that if an insured is in Chapter 11 bankruptcy it may never be prejudiced by an insurer's conduct in a direct action suit. We do, however, hold Sosebee did not provide evidence that Harvest was actually prejudiced by Steadfast's inconsistent conduct in this case. Thus, the district court erred in denying summary judgment to Steadfast and granting summary judgment to Sosebee.

## V

For these reasons, we REVERSE and render summary judgment for Steadfast.